CARLISLE TIRE AND RUBBER COMPANY, Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 79-3-00423.

United States Court of International Trade.

June 19, 1981.

Eugene L. Stewart and Daniel G. Rooney, Washington, D. C., for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Commercial Litigation Branch (Sheila N. Ziff, New York City, on the brief), for defendant.

Lauren R. Howard, Collier, Shannon, Rill & Scott, Washington, D. C., of counsel, for amicus curiae Bicycle Manufacturers Association of America, Inc.

MALETZ, Judge.

Plaintiff, a domestic manufacturer of bicycle tires and tubes, challenges a negative countervailing duty determination published by the Secretary of the Treasury on January 8, 1979 involving bicycle tires and tubes from Taiwan. 44 F.R. 1815–16. The determination was rendered under section 303 of the Tariff Act of 1930, as amended (19 U.S.C. § 1303) as that provision existed prior to January 1, 1980.[1]

In substance, the Secretary found that the Taiwanese bicycle tire and tube manufacturers received benefits from the Government of Taiwan under programs providing for (1) a preferential income tax ceiling; (2) preferential export financing; and (3) deferred payment of duties on machinery and equipment imported into Taiwan. However, the Secretary further found "that the benefits involve an aggregate amount considered to be *de minimis* in size, and that therefore no bounty or grant is being paid or bestowed * * * within the meaning of section 303, Tariff Act of 1930, as amended (19 U.S.C. § 1303) upon the manufacture, production or exportation of bicycle tires and tubes from the Republic of China." 44 F.R. at 1816. Specifically, the aggregate benefit found by the Secretary to be *de minimis* was 0.28 percent ad valorem.

Presently before the court are cross-motions for summary judgment. Plaintiff argues (1) that even a *de minimis* benefit must be countervailed; and (2) that the benefits received by the Taiwanese manufacturers were actually several times larger than those found by the Secretary. On the other hand, defendant argues that the *de minimis* rule is applicable to a countervailing duty determination and that the Secretary correctly determined the amount of the benefits.

---

1. January 1, 1980 was the effective date of the countervailing duty amendments made by the Trade Agreements Act of 1979. 93 Stat. 306–7 (1979).

## I

We turn first to plaintiff's claim that even *de minimis* bounties and grants must be countervailed. Because the countervailing duty statute is mandatory in its terms, requiring the imposition of a duty in all cases where a bounty or grant was received by the foreign manufacturers, plaintiff reasons that the *de minimis* doctrine should play no role in the Secretary's decision as to whether duties are to be imposed. However, the *de minimis* doctrine is in fact applicable to even those statutes which, by their terms, apply in all cases. Illustrative is *N.L.R.B. v. Fainblatt*, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014 (1939), where the Supreme Court, while holding that the National Labor Relations Act reached all businesses engaged in interstate commerce and embodied the full scope of Congress' power to regulate such commerce, nevertheless indicated that the *de minimis* doctrine was still applicable (*id.* at 607, 59 S.Ct. at 672):

> The Act on its face thus evidences the intention of Congress to exercise whatever power is constitutionally given to it to regulate commerce by the adoption of measures for the prevention or control of certain specified acts * * *. Examining the Act * * * we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected *more than that to which courts would apply the maxim de minimis.* [Emphasis added.]

Further, the *de minimis* doctrine has been applied by this court to "mandatory" statutes requiring the collection of import duties. Thus, in *R. W. Gresham v. United States*, 3 Cust.Ct. 308, C.D. 263 (1939), the court observed that the case before it was one where the *de minimis* rule should be applied. In that circumstance, the court concluded that although certain imported flavoring contained alcohol, the amount "of alcohol * * * [was] not substantial enough to bring this flavor[ing] within the provision" covering flavorings containing alcohol. *Id.* at 310. See also *Varsity Watch Co. v. United States*, 34 CCPA 155, 161–63,

C.A.D. 359 (1947); *Genender Wholesale v. United States*, 1 CIT ——, Slip Op. 81–40 at 4–5 (May 7, 1981).

Additionally, in *ASG Industries, Inc. v. United States*, 82 Cust.Ct. 101, 138, C.D. 4794, 467 F.Supp. 1200, 1231 (1979), *appeal dismissed*, June 18, 1980, this court, in the context of applying the countervailing duty statute before us here, stated:

> [T]he economic benefits extended * * * by the Italian Government are concededly "grants" within the dictionary meaning of that term *and are more than de minimis.* This being the case, whether or not their economic effect is to distort international trade or to induce exports is immaterial. For, as explained in detail, such a bounty or grant is within the reach of the countervailing duty law without regard to its trade effects. [Emphasis added.]

Similarly, in *ASG Industries, Inc. v. United States*, 67 CCPA ——, C.A.D. 1237, 610 F.2d 770 (1979), which specifically held that the countervailing duty statute was mandatory, the court in discussing the authority of the Secretary to waive imposition of a countervailing duty, indicated the applicability of the *de minimis* rule to the countervailing duty statute (67 CCPA at ——, 610 F.2d at 776):

> To permit the Secretary to avoid using his waiver authority (and to avoid having to find that a more than *de minimis* bounty or grant or its adverse effect has been eliminated or substantially reduced) by simply finding that, for purposes of 19 U.S.C. 1303, there is no bounty or grant * * * would * * * frustrate the congressional intent to tighten administration of the countervailing duty law. [Emphasis omitted.]

In short, there is clear precedent for applying the *de minimis* rule to "mandatory" statutes and the countervailing duty statute in particular. Considering that a *de minimis* benefit is, by definition, of no significance whatever, I see no reason to reject or limit the thrust of these cases. The court therefore holds that the *de minimis* doctrine is applicable to cases arising under the countervailing duty statute.

## II

■ We consider next plaintiff's alternative argument that the Secretary's final determination seriously understated the value of the benefits received by the Taiwanese bicycle tire and tube manufacturers and that these benefits were more than *de minimis.*

By way of background, during the period covered by the countervailing duty investigation, the usual income tax rate paid by Taiwanese manufacturers was 35 percent of taxable income. However, Article 10 of the Taiwanese Statute for Encouragement of Investment placed a limit on the tax rate to be applied to the income of qualifying firms. Five producers of bicycle tires and tubes in Taiwan benefited under this program and enjoyed a maximum tax rate of only 25 percent. Although the Secretary concluded that the ad valorem benefit of this program was only 0.27 percent, plaintiff contends that the actual benefit was 0.71 percent. At the heart of this difference is the question of whether the Secretary relied upon the correct figures in calculating the benefit of the lower tax rate.

The Secretary had two alternate sets of figures upon which he could have relied. One set, furnished by the Government of Taiwan in response to the Secretary's countervailing duty questionnaire, contained a table setting forth income tax data, the first column of which was headed "Value of Income Tax Ceiling of 25 percent." This table appears, on its face, to set forth the *value* and thus the benefit of the lower income tax rate for each firm.

For reasons unclear on the record, the Secretary chose not to rely upon the Government of Taiwan figures. Instead, the Secretary relied upon a set of figures provided by counsel for the Taiwan Bicycle Tire and Tube Manufacturers Association (the Association), which purport to represent the *actual tax paid* by each Taiwanese firm at the rate of 25 percent. Extrapolating from this second set of figures, the Secretary computed the ad valorem benefit of the lower rate.

Significantly, the second set of figures provided by the Association's counsel and relied upon by the Secretary, cannot be reconciled with the figures furnished by the Government of Taiwan. Thus, a comparison of the figures which the Association's counsel says represents the *actual tax paid* at 25 percent, with the figures the Government of Taiwan submitted as the *value* of being taxed at a lower rate, reveals that both sets of figures are virtually identical.

Put otherwise, the Government of Taiwan presented a figure for each producer; that amount was identified as the *value of the benefit* received by the particular firm. Counsel for the Association presented essentially identical figures but claimed that those figures represented the *actual income tax paid* as opposed to the value of the benefit.

Plaintiff alleges that the Secretary erred in relying upon the figures submitted by the Association's counsel and urges this court to treat the figures supplied by the Government of Taiwan as correct. Defendant counters by stressing, without clear support in the record, that there is a close relationship between counsel for the Association and the Taiwanese Government and that the figures provided by the Association are in effect a semi-official clarification of the figures provided by the Government of Taiwan. Because of this, the argument proceeds, it was reasonable for the Secretary to rely upon the Association's figures.

The problem with defendant's argument, however, is that nothing in the record clearly indicates that the set of figures furnished by the Association's counsel is in fact a Taiwanese Government clarification of the prior figures. And even if the set of figures furnished by the Association could be traced to the Taiwanese Government, nothing in the record reveals which set of figures is correct. In short, the record reveals no satisfactory basis for the Secretary's choosing between the two sets of figures and his decision to rely upon the set of figures furnished by the Association rather than the figures furnished by the Government of Taiwan was therefore arbitrary.

See, e. g., *National Citizens Com. For Broadcasting v. F.C.C.*, 555 F.2d 938, 956 (D.C.Cir.1977), *aff'd and rev'd in part on other grounds*, 436 U.S. 775, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978); *Associated Indus. of N.Y.S., Inc. v. United States Dept. of Labor*, 487 F.2d 342, 349–350 (2d Cir. 1973).

■ What is more, the Secretary's determination of the amount of the net bounty or grant, as well as his decision not to impose countervailing duties, is subject to *de novo* review. *ASG Industries, Inc. v. United States*, 67 CCPA at ——, 610 F.2d at 778–780. Thus a mere showing of reasonableness on the part of the defendant does not suffice to establish the correctness of the Secretary's determination. Here the presumption of correctness enjoyed by the Secretary's determination has been overcome by the existence of two sets of figures each of which casts grave doubt upon the other. Therefore, in view of the absence of clear evidence indicating which set of figures should have been relied upon, the court cannot approve the Secretary's findings as to the ad valorem benefit of the 25 percent tax rate. For the same reason, the court cannot accept plaintiff's computations which are based on the Taiwanese Government's figures.

### III

■ Unresolved questions of material fact are also present with regard to the preferential export financing program. Under that program, the Government of Taiwan made available to exporters short-term financing at a specified below-market rate of interest. The data obtained by the Secretary as to this program did not indicate the amount of each loan and the actual duration of time it was outstanding. Nor did such data include the actual amount of interest paid either on a per loan, per manufacturer, or industry-wide basis. In the absence of such information it was not possible for the Secretary to determine the benefit of this program to the Taiwanese manufacturers.[2] Because defendant as well as plaintiff base their computations on inadequate data, the court is unable to accept either party's conclusions as to the ad valorem benefit of this program.

It is thus apparent that the record does not contain sufficient information to enable the court to determine or reasonably estimate the amount of benefit received by the Taiwanese manufacturers, let alone decide whether or not that benefit is *de minimis*. In sum, neither party has demonstrated "what the truth is," and plaintiff's motion and defendant's cross-motion for summary judgment are therefore denied. *N.L.R.B. v. Smith Industries, Inc.*, 403 F.2d 889, 893 (5th Cir. 1968).

### IV

Given the denial of both parties' motions for summary judgment, the court could simply allow this action to proceed to trial. However, the court is also empowered under the Customs Courts Act of 1980 to remand this action for a redetermination of the ad valorem benefit received by the Taiwanese manufacturers. 28 U.S.C. §§ 2643(b) and (c)(1). See also, e.g., *ASG Industries, Inc. v. United States*, 1 CIT ——, Slip Op. 81–34 (Apr. 24, 1981); *The Budd Company, Railway Division v. United States*, 1 CIT ——, 507 F.Supp. 997 (1980). See also *SCM Corp. v. United States*, 84 Cust.Ct. 227, C.R.D. 80–2, 487 F.Supp. 96 (1980).

But the fact that this court may decide *de novo* the issues presented by this action does not mean that such a remand would be inappropriate. As was explained in *Douglas v. Hampton*, 512 F.2d 976, 988 (D.C.Cir. 1975):

> "[j]udicial and administrative agencies 'are to be deemed collaborative instrumentalities of justice,'" and "[c]ourts have frequently called upon administrative bodies ... for assistance in connec-

---

**2.** It is true that the countervailing duty statute permits the Secretary to "determine, *or estimate*, the net amount of each * * * bounty or grant." [Emphasis added.] However, in the court's view, the Secretary should not resort to an estimate unless it is not reasonably possible to obtain the information necessary for a determination.

tion with issues falling within an area of administrative competence." The District Court stated that it was exercising its discretion in remanding the case in the interest of sound judicial administration, and we cannot say that the decision to do so was erroneous. * * * [Footnote omitted.]

See also *Bethlehem Steel Corporation v. Grace Line, Inc.*, 416 F.2d 1096, 1108–1109 (D.C.Cir.1969); *Atchison, Topeka and S.F. Ry. Co. v. Aircoach Transp. Ass'n*, 253 F.2d 877, 885–86 (D.C.Cir.1958), *cert. denied*, 361 U.S. 930, 80 S.Ct. 372, 4 L.Ed.2d 354 (1960).

As the Supreme Court indicated in an analogous context: "Where suit is brought after the first administrative decision and stayed until remaining administrative proceedings have concluded, judicial resources are conserved and both parties fully protected." *United States v. Michigan National Corp.*, 419 U.S. 1, 6, 95 S.Ct. 10, 12, 42 L.Ed.2d 1 (1974). Here, a new investigation may lead to a countervailing duty determination with which plaintiff agrees, thereby obviating the need for a trial. Also, "without an adequate factual record, [this court cannot] perform a meaningful judicial review of countervailing duty determinations." *ASG Industries, Inc. v. United States*, 67 CCPA at ——, 610 F.2d at 778. Remanding this action will insure that an adequate factual basis for resolution of this dispute will be presented to the court should this case eventually proceed to trial.

Given these circumstances, this action is stayed and the Secretary's negative countervailing duty determination is vacated. The action is remanded to the Secretary of Commerce [3] for further inquiries as may be needed to determine the ad valorem benefit provided the Taiwanese bicycle tire and tube manufacturers by the Government of Taiwan. The redetermination is to be made in accordance with the countervailing duty law in effect prior to January 1, 1980. See Pub.L. 96–39, Title X, §§ 1002(b)(1)(B) and (2), 93 Stat. 307. The Secretary is directed to report his redetermination to the court within 120 days of this order.

**3.** The functions of the Secretary of the Treasury under 19 U.S.C. § 1303 were transferred to the Secretary of Commerce pursuant to Reorg. Plan No. 3 of 1979, § 5(a)(1)(C), 44 F.R. 69275, 93 Stat. 1381, eff. Jan. 2, 1980, as provided by section 1–107(a) of Ex. Ord. No. 12188, January 2, 1980, 45 F.R. 993.