**REPUBLIC STEEL CORPORATION, et al., Plaintiffs,**

v.

**UNITED STATES, et al., Defendants.**

**Court No. 82–2–00207.**

United States Court of International Trade.

July 22, 1982.

Cravath, Swaine & Moore, New York City (Alan J. Hruska, New York City, of counsel), for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Branch Director, Commercial Litigation Branch, Velta A. Melnbrencis, Commercial Litigation Branch, and Robert Seely, Staff Atty., Import Administration, U. S. Dept. of Commerce, New York City, for defendants.

United States Steel Corp. amicus curiae by its Law Dept. (D. B. King, J. J. Mangan and Leslie Ranney, Pittsburgh, Pa., of counsel).

## OPINION AND ORDER ON CROSS MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

WATSON, Judge:

Plaintiffs brought this action to obtain judicial review of decisions by the Department of Commerce not to start a number of countervailing duty investigations and its decision not to start an antidumping duty investigation. The action originates in section 516A of the Tariff Act of 1930 (the Act) (19 U.S.C. § 1516a(a)(1)(A)(i)) and the Court has jurisdiction under 28 U.S.C. § 1581(c).

The matter is now before the Court on cross-motions for judgment on the Administrative Record under Rule 56.1 of the Rules of the Court. A brief was also received on behalf of amicus curiae, the United States Steel Corporation. Oral argument was held on July 15, 1982.

On January 11, 1982, plaintiffs filed a petition with the International Trade Administration of the Department of Commerce (ITA) and the United States International Trade Commission (ITC) seeking the assessment of countervailing duties and antidumping duties on the ground that the

steel industry in the United States was being materially injured by, or threatened with injury from, the importation of nine types of steel products.[1] It was alleged that the products were being subsidized by ten foreign nations[2] as well as by the European Economic Community (EC). With respect to the petition for antidumping duties, it was alleged that the products from Romania were sold or were likely to be sold at less than fair value.

Under sections 702(c) and 732(c) of the Act (19 U.S.C. §§ 1671a(c) and 1673a(c)), which are parallel provisions governing the administrative treatment of the petition in countervailing duties and antidumping duties, the ITA had 20 days to determine the sufficiency of the petition and, depending on that determination, either start an investigation or dismiss the petition, with the publication of notice in the Federal Register in either instance.

On February 2, 1982, the ITA dismissed the petition insofar as it asked for the assessment of countervailing duties on four types of steel bars from the Netherlands and one type from Luxembourg on the ground that in recent years there had been no or only *de minimus* importations of those products. 47 Fed.Reg. 5743 and 5750. The ITA also dismissed the petition insofar as it asked for the assessment of antidumping duties on hot rolled and cold rolled carbon steel sheet from Romania on the same ground, as well as on the ground that there was no evidence of *bona fide* offers at less than fair value.

To the same effect, but without a published notice, the ITA did not initiate a separate investigation of the allegations relating to the EC.[3] In other words, it did

---

1. Carbon plate, hot rolled carbon sheet, cold rolled carbon sheet, galvanized sheet, structurals, hot rolled carbon bars, hot rolled alloy bars, cold finished carbon bars and cold finished alloy bars.

2. United Kingdom, France, Belgium, Federal Republic of Germany, Luxembourg, the Netherlands, Italy, Brazil, Spain and South Africa.

3. Defendants raise jurisdictional objections, which border on the frivolous, that the complete failure of the ITA to initiate investigations against the EC as an entity is somehow not reviewable, either because it was not a "determination" in the formal sense, or because it was merely a choice of a method of investigation which can only be challenged in a judicial review of the ultimate decision to which the method contributes. The short answer to these arguments is that what was done by the ITA represents a more serious failure to initiate than was specified in the statute and is reviewable *a fortiori*.

not treat the EC as a distinct country. Instead, when it determined to start investigations it limited each investigation to products from a single nation. When the nation was a member of the EC, the ITA announced in the notice of initiation of that investigation that it was proceeding to investigate both the national and the EC subsidies with respect to the products of that nation. 47 Fed.Reg. 5739–52.

The defendants make the assertion that by ascertaining the EC subsidies in each national investigation the ITA made an investigation of the EC. This assertion comes from a limited focus on section 702(c) of the Act (19 U.S.C. § 1671a(c)) and an inflation of its importance. That section states that if the ITA finds the petition sufficient it shall "commence an investigation to determine whether a subsidy is being provided." But the statutory provision which is central to the commencement of an investigation in the full sense is section 702(b) of the Act (19 U.S.C. § 1671a(b)) which states that "a countervailing duty proceeding shall be commenced" whenever an interested party files a sufficient petition with the ITA. The term "proceeding" is defined in the legislative history as "that activity which begins when a petition is filed under section 702(b) and ends upon the final disposition of the case, up to a revocation of a countervailing duty order, if any, under section 702, 703, 704, 705, or 751, as the case may be." S.Rep.No.96–249, 96th Cong., 1st Sess. 46 (1979), U.S.Code Cong. & Admin.News 1979, pp. 381, 432.

■ In effect then, it is the *petition* which begins the over-all proceeding and it is the *petition* which should control the objectives of the entire investigation unless it is found to be defective and dismissed within 20 days. The "proceeding" started by petition is the same thing as the "investigation" which is self-initiated by the ITA under section 702(a) (19 U.S.C. § 1671a(a)). In both cases the investigation must have a coherent purpose, which means that there must be a correspondence as soon as possible between the determination of the element of subsidy and the determination of the element of injury. This is the inescapable conclusion which flows from the mandate in 19 U.S.C. § 1671a(b) that "a countervailing duty proceeding *shall be commenced.*" The *entire* proceeding must be commenced.

■ In dealing with the petition to examine its sufficiency, the ITA has a limited ministerial function. The law states that it shall determine only two things, first "whether the petition alleges the elements necessary for the imposition of a duty under section 701(a)" [19 U.S.C. § 1671(a)] and second, whether the petition "contains information reasonably available to the petitioner supporting the allegations." If it finds a lack of alleged elements or information, it may dismiss the petition. On the other hand, if the petition is sufficient, the ITA has an obligation to maintain the proceeding in a form which corresponds to the petition and effectuates the coherent purposes of the entire proceeding. This means that it must not do anything which has the effect of altering the over-all investigation by precluding, or making discretionary, that which should be mandatory. By this the Court refers to the preliminary injury determination by the ITC, which happens to be the first determination required after a petition is found sufficient. By not treating the merchandise subsidized by the EC in separate investigations the ITA left the ITC with the understandable impression that the ITC could only measure injury on the basis of the subsidized production from each country separately. This was the apparent result of the fact that the ITC preliminary injury determination is stated in section 703(a) of the Act, (19 U.S.C. § 1671b(a)) by reference to "the merchandise which is the subject of the investigation by the [ITA]." If this is related back to a self-initiated investigation by the ITA, all is well. But if it is related back to a petition-initiated investigation, an alteration by the ITA of the objectives of the petition may tend to narrow the ITC's mandate.

■ The defendants argue that the ITC could nevertheless have made a unified in-

jury determination for products subsidized by the EC. But this implies both that the ITC had the discretion to do so, which is an open question,[4] and that it should have been left free to do so, which is definitely wrong. The unified consideration of injury should not be a matter of discretion when the petition alleges subsidy from a single source and that source is a country within the meaning of the law. When that occurs, the proceeding must encompass the alleged injury from all the merchandise subsidized by the country, and the ITA, in its processing of the petition, must not interfere with that objective. On the contrary, in its published announcement of the investigation it must recognize the larger implications of the form given to its subsidy investigations and take positive steps to fashion the investigations in a manner which corresponds to the full relief requested in the petition and which is in harmony with the duties of the ITC. In short, in a petition-initiated proceeding, because the operation of the statute gives the ITA determination and announcement of an investigation an apparent impact on the larger investigation, it must be done with a recognition of that impact and with a deference to the needs of the entire proceeding.

As regards the EC, this petition alleged the elements necessary for the imposition of countervailing duties and contained sufficient supporting information. No one argues otherwise and, in fact, the ITA "investigation" of EC subsidies is an acknowledgement that the petition was sufficient. Nevertheless, defendants claim that the ITA had discretion to determine whether the EC should be considered a country for the purpose of countervailing duty investigations. This arises from a misunderstanding of a statutory definition whose primary purpose, ironically, was to make it clear that customs unions are subject to the countervailing duty law in *all* respects. Section 771(3) of the Act (19 U.S.C. § 1677(3)) defines the term "country" for the purposes of countervailing duty proceedings as follows:

The term "country" means a foreign country, a political subdivision, dependent territory, or possession of a foreign country, and, except for the purpose of antidumping proceedings, may include an association of two or more foreign countries, political subdivisions, dependent territories, or possessions of countries into a customs union outside the United States.

The defendants seize on the use of the phrase "*may* include" as indicative of a grant of discretion to the ITA and join to it a sentence from the legislative history in which it is stated that "the administering authority will determine, on the basis of the facts in each case, what entity or entities will be considered the 'country' for the purposes of a title VII proceeding." S.Rep.96–249, 96th Cong. 1st Sess. 81 (1979), U.S.Code Cong. & Admin.News 1979, p. 467.

This argument comes to naught however, when, in the next paragraph of the legislative history, a far more direct indication of intention is found as follows:

In countervailing duty proceedings, a subsidy granted by a political subdivision of a foreign country, such as a province or a development authority, *or by an institution of a customs union, will be considered to be granted by a "country." Thus, the European Communities, as well as each of its member states, is a country for purposes of countervailing duty proceedings.* [emphasis supplied]

■ More need hardly be said on the subject other than to point out that the legislative history relied on by the defendant to determine what entity will be the country for the purpose of a countervailing duty proceeding, obviously does not envision more than selection of that entity which best suits the objectives of the investigation when there is a genuine possibility of unnecessary duplication or when the status of an entity is uncertain. One example

---

**4.** This is an issue in a pending action for judicial review of negative preliminary injury determinations by the ITC. *United States Steel*

*Corporation v. United States, et al.,* Consolidated Court No. 82–3–00288. (U.S.C.I.T. filed March 3, 1982)

might be when producers are alleged to receive subsidies from a provincial or state government as well as subsidies from a central government. Since all of these can be considered countries, it is proper to select one as the "country," if by so doing, all the allegations of the petition can thereby be accommodated. On the other hand, in this case the selection of the individual member states of the EC as the "countries" did not accommodate the fact that injuries were alleged as a result of the *entire* EC production of the products subsidized by the EC, and did not fully recognize that the EC was itself a country under the law. What the ITA did went beyond any conceivable grant of discretion and amounted to an unjustified exclusion of a named country from a proceeding. Stated differently, the ITA may have ascertained the EC subsidies but it also jeopardized a corresponding evaluation of the injury caused by the EC subsidies, unimpeded by national boundaries.

For these reasons, the Court will require the initiation by the ITA of separate investigations of the EC, to be done in the same manner as the investigations of individual nations. These investigations, by virtue of being directed at the EC as the country providing certain subsidies, will, to that extent, require the ITC to consider the EC subsidized products as unitary causes of injury or threat of injury.

Plaintiffs have also brought this action to obtain judicial review of the dismissal of their petition insofar as it asked for countervailing duties with respect to four types of steel bars from the Netherlands, one type from Luxembourg and, insofar as it asked for antidumping duties with respect to hot and cold rolled carbon steel sheet from Romania.

The reason given for the steel bar dismissals was that there had been no, or only *de minimus*, imports of those products in recent years and therefore the statutory standard in the countervailing duty law, that there be "a subsidy with respect to . . . merchandise imported into the United States . . ." was not met.

The reason given for the steel sheet dismissal was that there had been no, or only *de minimus*, imports of those products in recent years, no evidence of bona fide offers on merchandise for export to the United States and therefore, no adequate allegation had been made of one of the two statutory prerequisites for the imposition of antidumping duty, i.e., that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value.

If the steel bar dismissals are taken at face value, they appear to be decisions on the merits as to the existence of a subsidy, which would be palpably improper at a stage when the ITA is only determining the sufficiency of a petition.

If they are viewed as a comment on the sufficiency of the petition, i.e., that claims of subsidy are not sufficiently alleged when there are no or *de minimus* importations, they are wrong for other reasons, which can be discussed together with the steel sheet dismissals. The latter dismissals stated that the consequence of no or *de minimus* importations in an antidumping case was an inadequate allegation of sales at less than fair value or likelihood of sales at less than fair value. In all instances these dismissals may be considered as based on the proposition that in circumstances where *no* or *de minimus* imports have been made in recent years the element of subsidy or sales, or likelihood of sales, at less than fair value cannot be sufficiently alleged in a petition for the imposition of countervailing or antidumping duties.

As a general proposition, this statement does not accord with the law because it ignores the fact that in cases of threat such as these, the quantity of recent imports may be irrelevant to the assessment of countervailing or antidumping duties. In the case of countervailing duties, under 19 U.S.C. § 1671[5] they may be assessed if an

---

5. § 1671. Countervailing duties imposed.

(a) General rule. If—

(1) the administering authority determines that—

industry in the United States is only threatened with material injury from subsidized merchandise. Antidumping duties, under 19 U.S.C. § 1673,[6] may be assessed on a basis which is even more anticipatory than countervailing duties, in that both the injury *and* the cause of injury (sales at less than fair value) can be of a projected nature.

 Even if the recent level of importation had some relevance to the nature of the alleged injury, as in a claim of present material injury, it would be improper for the ITA to utilize a *de minimus* test for two additional reasons. First, the concept of *de minimus* was not developed, and is not properly used, to evaluate pleadings. It is used in the later application of the law to the facts, as is exemplified in the facts of the very case cited by defendants in support of the ITA's use of *de minimus* in determining the sufficiency of a petition. *Carlisle Tire And Rubber Co. v. U. S.*, 2 C.I.T. ——, 517 F.Supp. 704, 706 (1981).

The law does not concern itself with trifles when it *knows* that they are trifles. It cannot know that from the complaint or petition without anticipating and subverting later stages of the administrative or judicial process. As noted earlier, the ITA's role in determining the sufficiency of a petition is a limited one.

Secondly, and related to the first point, by reaching a conclusion that a given level of importation was *de minimus*, the ITA usurped the role of the ITC whose duty it is to gauge whether the levels of importation · have any meaningful effect. See S.Rep. 96–249, 96th Cong., 1st Sess. 86, 87 (1979). This also answers a related argument by defendants that the ITA was acting here in conformity with the requirements of certain international agreements [7] that these investigations not be initiated without simultaneous consideration of evidence of the existence of both subsidy and injury, or that they be terminated as soon as it is found that there is not sufficient evidence of ˙ dumping, or that the volume of dumped imports, actual or potential, is negligible.

 Congress has explicitly enacted this legislation to conform to trade agreements entered into by the United States and has defined those procedures which constitute conformity in the initiation of investigations. Thus, the petition determination by the ITA *and* the preliminary injury determination by the ITC were considered together to implement the code requirement

> (A) a country under the Agreement, or
> (B) a person who is a citizen or national of such a country, or a corporation, association, or other organization organized in such a country,
> is providing, directly or indirectly, a subsidy with respect to the manufacture, production, or exportation of a class or kind of merchandise imported into the United States, and
> (2) the Commission determines that—
> > (A) an industry in the United States—
> > (i) is materially injured, or
> > (ii) is threatened with material injury, or
> > (B) the establishment of an industry in the United States is materially retarded, by reason of imports of that merchandise,
> then there shall be imposed upon such merchandise a countervailing duty, in addition to any other duty imposed, equal to the amount of the net subsidy.

**6.** § 1673. Antidumping duties imposed
> If—
> (1) the administering authority determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and
> (2) the Commission determines that—

> > (A) an industry in the United States—
> > (i) is materially injured, or
> > (ii) is threatened with material injury, or
> > (B) the establishment of an industry in the United States is materially retarded, by reason of imports of that merchandise.
> then there shall be imposed upon such merchandise an antidumping duty, in addition to any other duty imposed, in an amount equal to the amount by which the foreign market value exceeds the United States price for the merchandise.

**7.** Specifically, defendants refer to provisions in two agreements approved under section (2)(a) of the Trade Agreements Act of 1979, Pub.L. 96–317, namely, The Agreement on Interpretation and Arbitration of Articles VI, XVI and XXIII of the General Agreement on Tariffs and Trade (GATT) (relating to subsidies and countervailing measures) and The Agreement on Implementation of Article VI of the GATT (relating to antidumping measures).

**908**

that before a countervailing duty investigation is initiated the existence of a subsidy and injury must be considered. S.Rep.No. 96–249, 96th Cong., 1st Sess. 49 (1979). The ITA's first duty in determining the sufficiency of a petition is to adhere to the procedures contained in the law and not to assume a larger responsibility by looking beyond the law to the codes or trade agreements it implements.

■ In the Court's view the petition and supporting material submitted during the 20-day period contained sufficient allegations and information to warrant the initiation of investigations of threatened injury. These included allegations of existing and recently expanded capacity, ability to shift from one product to another, the existence of economic incentives to export and reasons for exports to be focused on the United States. The underlying merits of these allegations may be reached in the course of the investigations, not in the determination of the sufficiency of the petition.

These laws embody a distinct encouragement to the commencement of investigations, even to the point of expecting the ITA to advise and assist private parties before they file a petition. The legislative history also makes the analogy between the requirements of these petitions and those needed to make out a cause of action for purposes of civil litigation. Even a rough analogy is sufficient to indicate that petitions should not be dismissed except for notable deficiencies. See H.R.Rep.No.96–317, 96th Cong., 1st Sess. 51 (1979). See also, S.Rep.No.96–249, 96th Cong., 1st Sess. 47 (1979), U.S.Code Cong. & Admin.News 1979, p. 381.

For the reasons discussed above, the Court finds that the actions of the ITA in not initiating separate investigations of the EC and in dismissing the petition insofar as it related to the steel bars and steel sheet previously discussed, were not in accordance with the law.[8] The Court finds that the petitions were sufficient to justify investigations in all these matters.

8. In view of the Court's finding that the dismissals were not in accordance with the law it does not reach plaintiffs' argument that they

It is therefore ORDERED that the ITA initiate investigations with respect to the products described in plaintiff's petition in conformity with this Opinion.

were also tainted by impermissible *ex parte* communications.