THE TIMKEN COMPANY, PLAINTIFF *v.* UNITED STATES, MALCOLM BALDRIGE, SECRETARY OF COMMERCE, LIONEL H. OLMER, UNDERSECRETARY FOR INTERNATIONAL TRADE ADMINISTRATION, UNITED STATES DEPARTMENT OF COMMERCE, LARRY BRADY, ASSISTANT SECRETARY FOR INTERNATIONAL TRADE ADMINISTRATION, UNITED STATES DEPARTMENT OF COMMERCE, GARY N. HORLICK, DEPUTY ASSISTANT SECRETARY FOR IMPORT ADMINISTRATION, UNITED STATES DEPARTMENT OF COMMERCE, LEONARD M. SHAMBON, DIRECTOR, OFFICE OF COMPLIANCE, INTERNATIONAL TRADE ADMINISTRATION, UNITED STATES DEPARTMENT OF COMMERCE, JOHN KUGELMAN, DIRECTOR, ANTIDUMPING ORDER COMPLIANCE DIVISION, INTERNATIONAL TRADE ADMINISTRATION, UNITED STATES DEPARTMENT OF COMMERCE, J. LINNEA BUCHER, COMPLIANCE OFFICER, ANTIDUMPING ORDER COMPLIANCE DIVISION, INTERNATIONAL TRADE ADMINISTRATION, UNITED STATES DEPARTMENT OF COMMERCE, DEFENDANTS, AND NTN BEARING CORPORATION OF AMERICA, INTERVENOR

Court No. 82-6-00890

Before MALETZ, *Senior Judge.*

(Dated June 5, 1984)

*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, Kathleen T. Weaver, David A. Hirsch,* and *Mary E. Tuck* on the briefs) for plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General, *David M. Cohen,* Director, Department of Justice, Civil Division, Commercial Litigation Branch (*Velta A. Melnbrencis,* on the briefs), for defendants.
*Barnes, Richardson & Colburn (Robert E. Burke, James H. Lundquist,* and *Thomas M. Keating* on the briefs; *James S. O'Kelly* on oral argument) for intervenor.

MALETZ, *Senior Judge:* Upon consideration of the briefs of the parties, and after oral argument, the court, for the following reasons, hereby grants defendants' motion—which plaintiff supports—for remand of this case to the International Trade Administration of the Department of Commerce for (1) recalculation of dumping margins with regard to tapered roller bearings and components produced and sold by NTN Toyo Bearing Company (NTN) and NTN Bearing Corporation of America (NBCA) during the period April 1, 1978 through November 14, 1979; and (2) reconsideration and, if warranted, rescission of the revocation in part of the dumping finding with regard to roller bearings from Japan produced and sold by NTN and NBCA.

1. Based on the November 18, 1983 sworn declaration of Leonard Shambon, Director of the Office of Compliance in the Import Administration, International Trade Administration, Department of Commerce (ITA), the court has reason to believe that the ITA's method of calculating the dumping margins involved here during the above period April 1, 1978 through November 14, 1979 may not

have been in accordance with its normal practice and may have been contrary to applicable law and regulation. The court therefore concludes that the ITA should re-examine and, if necessary, correct its calculations of the dumping margins and inform the court of the results.

2. The law is clear that remand is appropriate where an agency has followed an improper method in making a determination or where there has been a defect in the agency's finding. *See, e.g., Ford Motor Co.* v. *NLRB,* 305 U.S. 364, 374–75 (1939); *Greene County Planning Bd.* v. *Federal Power Comm'n,* 559 F.2d 1227 (2d Cir. 1977) (en banc), *cert. denied,* 434 U.S. 1086 (1978). Indeed, a failure to reopen in the face of erroneous factual information that would clearly mandate a change in result would itself be arbitrary and capricious. *Greene County, supra,* 559 F.2d at 1232. Thus, this court has on several occasions remanded cases to the administrative agency for the purpose of clarifying or correcting challenged determinations. *See, e.g., Roquette Freres* v. *United States,* 6 CIT 42, Slip Op. 83–71 (July 18, 1983); *Carlisle Tire & Rubber Co.* v. *United States,* 1 CIT 352, 357–58, 517 F. Supp. 704, 708–09 (1981).

3. Intervenor NBCA vigorously opposes remand and, for one thing, insists that cases such as *Upjohn Co.* v. *Pennsylvania R.R. Co.,* 381 F.2d 4, 5 (6th Cir. 1967), and *Atlantic Sugar, Ltd.* v. *United States,* 1 CIT 211, 511 F. Supp. 819 (1981), preclude remand here. These cases, however, are clearly distinguishable. In *Upjohn,* the Interstate Commerce Commission (ICC) denied a reparation claim in an administrative ruling. Later, the ICC took a different position in another case and granted Upjohn's petition to reconsider its prior determination. The Sixth Circuit reversed such reconsideration on the ground that it stemmed from a new and different policy that the ICC sought to apply retroactively. "To permit such retroactive action," the court pointed out, "would result in chaos and uncertainty of action for those who must rely on [ICC] findings." *Upjohn, supra,* 381 F.2d at 5.

Here, however, no new policy is sought to be retroactively applied. On the contrary, the gravamen of the Shambon declaration is that the ITA's method of calculating the dumping margins in the present case was not in accordance with its normal practice and probably contrary to law and regulations.

*Atlantic Sugar,* too, is easily distinguishable. There the court denied the government's motion to remand to correct "computational errors" on the basis that such remand was not appropriate *at that time* because the court did not have sufficient information to determine the exact nature of the errors. Subsequently, the case was remanded to correct "recently discovered errors." In the present case, the government has filed a declaration by Mr. Shambon setting out in detail the claimed errors.

4. The court is mindful that along with their motion for remand, the defendants have filed a stipulation signed by counsel for plain-

tiff and the defendants, which provides that if upon remand in this case, recomputations result in actual dumping margins, plaintiff will dismiss with prejudice a companion case, *Timken Co. v. Regan*, Court No. 81-12-01749, in which, among other things, Timken seeks some $35,000,000 in damages against numerous government officials, both in their personal and official capacities. According to the government, the main purpose of this stipulation was to protect the interests of the defendants in the *Regan* case who were sued in their individual capacities. Given that Mr. Shambon is one of the defendants in the *Regan* case, the intervenor contends that he has been guilty of unlawful conduct by supporting the motion for remand. The intervenor adds that by its allegedly "unconscionable conduct," *i.e.,* seeking a remand contrary to the wishes of the intervenor, the "ITA has discarded its position as an independent adjudicatory body * * * and has, instead, assumed the role of a mere litigant attempting to dispose of a monetary claim against it" and "has offended not only this * * * Court and the statutory scheme of administrative antidumping review, but has willfully compromised its fundamental responsiblity [*sic*] of administering even-handed justice" so that the "unprecedented action by the government so taints its position that the motion for remand should be preliminarily and fully denied on that basis alone." For the reasons set out below, the court cannot accept these contentions.

In the first place, Mr. Shambon has filed a second sworn declaration, dated March 9, 1984, in which he states that he was not involved in, and had not been informed of, discussions with plaintiff's counsel regarding a possible stipulation in connection with a remand of the issues addressed in his first declaration, and learned for the first time that counsel for plaintiff and defendants were considering a stipulation regarding the *Regan* case and the remand *after* he had signed the first declaration on November 18, 1983. Significantly, intervenor declares that it accepts Mr. Shambon's statements in this regard "at face value."

Further, Mr. Shambon states in his second declaration that the errors in the computations were brought to his attention by William Matthews, Director of the Antidumping Compliance Division of the Office of Compliance, and Jonathan Seiger, the Import Compliance Specialist now responsible for the case on tapered roller bearings from Japan. Neither Mr. Matthews nor Mr. Seiger is a defendant in the *Regan* case.

Lastly, as stated by Mr. Shambon in his second declaration, "[t]he approving authority for the results of a remand of final results of administrative review and revocation, such as the one the Government has requested in this case, is the Deputy Assistant Secretary for Import Administration, Alan F. Holmer." Mr. Holmer is not a defendant in the *Regan* case and was not even employed by the Commerce Department at the time that case was instituted.

Considering that this second declaration by Mr. Shambon is uncontradicted by intervenor and that intervenor, in fact, has withdrawn a motion before the court for discovery, it must be concluded that intervenor's allegations of impropriety are without foundation. Nevertheless, to avoid any appearance of impropriety, the order of remand will provide that no person who is a defendant in the *Regan* case shall participate directly or indirectly in the proceedings on remand.

5. In addition, the intervenor alleges that at an ex parte meeting on November 18, 1982 between Timken representatives and an Assistant Secretary of Commerce and other officials of the Commerce Department, there was specific discussion of the present case. It is clear, however, that at this meeting, which was later referenced in a letter of November 29, 1982 from counsel for Timken to the Assistant Secretary, counsel for Timken sought to address certain policy issues and methods of approach taken by the agency, which should be applied in *future* agency investigations. More specifically, it is apparent from the November 29 letter that the purpose of the meeting was to discuss whether the agency's existing policy was achieving the goals intended by Congress and whether the agency could exercise its discretion in a different manner in future cases to better accomplish the objectives of the law. Neither at the November 18 meeting, nor in the follow-up letter, was there any attempt by Timken to influence the agency's handling of its defense in court. Indeed, counsel for Timken made it clear to the Commerce Department officials that, for purposes of the meeting, they assumed that the department's prior practices were lawful.

What is more, intervenor's counsel was apprised fairly expeditiously of the November meeting and follow-up letter. In fact, on January 19, 1983, intervenor's counsel wrote a letter to the Assistant Secretary of Commerce, in which he (1) acknowledged receipt of the follow-up letter, which he termed "inappropriate"; (2) recognized that the Assistant Secretary had instructed counsel for Timken not to comment upon this case; (3) stated that he had "every reason to believe that the Department of Commerce representatives have acted properly"; and (4) addressed matters relating to NTN, which had allegedly been misrepresented in the follow-up letter.

In light of the foregoing considerations, the court concludes that there were no improper ex parte proceedings that led to the present remand motion. Furthermore, all documents that relate to any contacts between the Commerce Department and Timken subsequent to the agency's revocation in part of the dumping finding have been disclosed to the parties and are in the public file.

6. Nor will the intervenor be prejudiced by remand. For pursuant to the order of remand that the court will issue, the parties will be allowed a reasonable time (1) to submit additional information and views to the ITA concerning the proposed recalculations; and (2) to

comment upon any recalculations, reconsideration and the rescission, if any. Moreover, in granting the motion for remand, the court makes no finding that the methodology initially employed by the ITA had been improper or that the methodology now proposed by the ITA would be more proper. Finally, if the intervenor is dissatisfied with the ITA's action upon remand, it will have full opportunity to express that dissatisfaction to the court—which, of course, will make the final decision. *See, e.g., Carlisle Tire & Rubber Co.* v. *United States,* 5 CIT 229, 564 F. Supp. 834 (May 18, 1983).

7. The parties are directed to submit to the court within fifteen days a proposed order of remand, consistent with this decision.