CARLISLE TIRE & RUBBER CO., DIVISION OF CARLISLE CORP., et al., Plaintiffs,

v.

The UNITED STATES, Defendant,

Dong-Ah Tire Ind. Co., Ltd., Heung-Ah Tire Ind. Co., Ltd., Defendants-Intervenors.

No. 84–7–01058.

United States Court of International Trade.

April 29, 1986.

Frederick L. Ikenson, P.C. (Frederick L. Ikenson and J. Eric Nissley), Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Dept. of Justice (Sheila N. Ziff), Washington, D.C., for defendant.

Dow, Lohnes & Albertson (William Silverman, John C. Jost, and Margaret B. Dardess), Washington, D.C., for defendant-intervenor Dong-Ah Tire Ind. Co., Ltd.

Arnold & Porter (Richard A. Johnson and Stephan E. Becker), Washington, D.C., for defendant-intervenor Heung-Ah Tire Ind. Co., Ltd.

### Memorandum Opinion and Order

DiCARLO, Judge:

Plaintiffs, domestic producers of inner tubes, have moved for relief from the Court's order of October 24, 1985, affirming, except as to verification of the weights

of the merchandise exported by intervenor Dong-Ah Tire Ind. Co., Ltd. (Dong-Ah), a final determination by the Department of Commerce, International Trade Administration (Commerce) that inner tubes from the Republic of Korea (Korea) are being sold in the United States at not less than fair value. *Carlisle Tire & Rubber Co. v. United States*, 9 CIT ——, 622 F.Supp. 1071 (1985). Commerce subsequently filed a report of the weighing of Dong-Ah's tubes during its on-site verification, in accordance with the Court's order.

The questions to be decided are:

(1) whether Commerce has established a rule that dumping margins of less than .5 per cent *ad valorem* are to be disregarded as *de minimis;* and

(2)(a) whether Commerce must have determined the weights of intervenors' merchandise exported to the United States when it adjusted the United States price of the merchandise to account for import duties imposed by Korea on raw materials which were rebated (referred to by the parties as "drawback adjustments"); and, if so,

(b) whether those weights are different than the weights of the same merchandise verified by Commerce to adjust the foreign market value of the merchandise to allow for differences in physical characteristics of the merchandise sold in the United States and Korea ("merchandise adjustments"); and, if so,

(c) whether Commerce may use both sets of weights in accordance with law.

### Background

Plaintiffs sought reconsideration of the Court's affirmance of Commerce's determination on two points. First, plaintiffs challenged Commerce's comparison of the imported inner tubes according to product category as "such or similar merchandise" under 19 U.S.C. §§ 1677(16) and 1677b(a)(1)(A) (1982 & Supp. II 1984). On December 27, 1985, the Court, in an unpublished memorandum opinion and order, denied that part of plaintiffs' motion, explaining that plaintiffs' arguments were ad-

dressed at 9 CIT at ——, 622 F.Supp. at 1076 & n. 7.

Second, plaintiffs said that (1) Commerce used one set of tube weights, derived from weighing sample tubes, for purposes of making merchandise adjustments pursuant to 19 U.S.C. § 1677b(a)(4) and 19 C.F.R. § 353.16 (1984), and another, higher, set of tube weights, derived from invoices and packing documents, for making drawback adjustments pursuant to 19 U.S.C. § 1677a(d)(1)(B), (2) Commerce's use of different export tube weights for different purposes was not supported by substantial evidence or in accordance with law, and (3) the Court should order Commerce to use the higher drawback weights in making merchandise adjustments.

In its December opinion the Court held that defendant and intervenors had not sufficiently addressed plaintiffs' argument that Commerce used conflicting sets of weights for the same merchandise in making drawback adjustments. The Court directed defendant to address at oral argument whether a dumping margin greater than *de minimis* would result if Commerce lowered the drawback adjustment using the tube weights verified by Commerce for determining the merchandise adjustment.

Defendant moved to set aside the Court's order directing oral argument claiming that the tube weights issue was moot since Commerce determined that the complete elimination of the drawback adjustment would result in dumping margins of .453506 percent for intervenor Heung-Ah Tire Ind. Co., Inc. (Heung-Ah) and .457188 percent for Dong-Ah. In its brief defendant argued that:

the dumping margins are still below .5 percent and are thus *de minimis*. Since elimination of the adjustments for drawback would still result in *de minimis* margins, the issue raised by plaintiff concerning the use of a different set of data for making drawback adjustments is irrelevant.

*Defendant's Motion for Order (1) Withdrawing Court Order Directing Oral Argument to be Held and (2) Entering Judg-*

*ment,* at 4. Commerce subsequently lowered the Heung-Ah margin to .440206 percent by eliminating the adjustment to United States price for Korean defense tax rebated for export sales and upwardly adjusting the United States price to account for duties and defense tax rebated on the inner tube valves.

Although plaintiffs had not objected to Commerce's use of the *de minimis* concept in Commerce's final determination, which found weighted average dumping margins of .03 percent for Heung-Ah and .01 percent for Dong-Ah, plaintiffs now argued that the new margins were not *de minimis,* and that the Commerce "rule" that margins less than .5 percent are *de minimis* is arbitrary and contrary to law.

At oral argument defendant declined to say what dumping margin would result if Commerce calculated drawback adjustment using the merchandise adjustment weights. Defendant said the drawback adjustment would not be recalculated without an order of remand. At the conclusion of oral argument the Court requested additional briefing on the *de minimis* issue.

The Court now holds that the action must again be remanded.

### The De Minimis Issue

Commerce has made no finding that margins of approximately .45 are *de minimis* in this investigation. Nevertheless, the Court agrees with counsel for defendant that if Commerce could validly apply a .5 percent *ad valorem* standard for determining whether a dumping margin is *de minimis,* judgment for defendant would be appropriate. But, the Court does not agree that Commerce can validly apply the .5 percent *de minimis* standard on this record.

Commerce may employ the *de minimis* concept. *See ASG Industries, Inc. v. United States,* 67 CCPA 11, 19, C.A.D. 1237, 610 F.2d 770, 776 (1979); *Carlisle Tire and Rubber Co. v. United States,* 1 CIT 352, 353–54, 517 F.Supp. 704, 706 (1981). In *Carlisle,* plaintiffs argued that even *de minimis* bounties and grants must be countervailed. Commerce found the aggregate subsidy to be .28 percent. The Court held that the *de minimis* doctrine applied in countervailing duty investigations. The Court did not discuss whether a fixed rate would be appropriate, or whether the .28 percent subsidy was *de minimis,* but the Court said that "a *de minimis* benefit is, by definition, of no significance whatever...." 1 CIT at 354, 517 F.Supp. at 706.

When Commerce assumed jurisdiction over antidumping investigations in 1980, it published final regulations for administering the antidumping law after public notice and comment. Commerce responded as follows to the public comment that it promulgate a regulation making dumping margins of 1.5 percent or less *de minimis:*

> This suggestion was not adopted. While, under current practice, margins as high as 0.3 percent have been considered *de minimis,* no conclusions have yet been reached on whether a fixed standard for *de minimis* margins in antidumping investigations is appropriate and, if so, what that level should be. *If and when such a determination is made, appropriate changes in the regulation will be proposed.*

45 Fed.Reg. 8182, 8185–86 (1980) (emphasis added). Commerce apparently recognized that such a *de minimis* standard, when and if adopted, would be subject to public notice and comment.

So far as the Court is aware, Commerce has never proposed a rule, or even claimed, that a .5 percent test applies in all cases. However, Commerce did state in July, 1982:

> Since the Department assumed responsibility for administration of the countervailing duty law on January 2, 1980 it has consistently applied the *de minimis* principle and has not found to be countervailable any entries made on or after January 1, 1980, which are subject to aggregate net subsidy rates of less than 0.5 percent *ad valorem.* This consistent administrative practice recognizes that at

some point a benefit becomes so small that it is of no significance.

*Countervailing Duty Order in Float Glass from Belgium,* 47 Fed.Reg. 32467, 32468 (1982).

■ Without deciding whether the antidumping law allows Commerce to promulgate a rule that a particular *ad valorem* percentage is *de minimis* in all cases, the Court holds that any such rule must be promulgated in accordance with the notice and comment provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1982). Commerce has not done this.

Under the APA, "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy...." 5 U.S.C. § 551(4) (1982). The APA requires that when an agency issues a rule it must publish a notice of rulemaking in the Federal Register, "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments," and "incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(b), (c).

The relevant exceptions to APA notice and comment are for "interpretive rules" and "general statements of policy." 5 U.S.C. 553(b)(3)(A).

■ An "interpretive rule" under the APA does not create new law, rights, or duties. *General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1565 (D.C.Cir.1984); *American Postal Workers Union v. United States Postal Service,* 707 F.2d 548, 558–59 (D.C.Cir.1983). Insofar as defendant claims the .5 percent threshold determines the rights and duties of parties to antidumping and countervailing duty proceedings before Commerce, the Court holds that the standard is not within the "interpretive rule" exception.

■ Nor is the .5 percent standard a "general statement of policy" under the APA. Courts have employed two criteria for distinguishing "rules" from "general

statements of policy." A statement of policy is not a rule if (1) it acts only prospectively, and (2) it "genuinely leaves the agency and its decision-makers free to exercise discretion." *American Business Ass'n. v. United States,* 627 F.2d 525, 529 (D.C.Cir.1980). As applied by defendant in its brief, the .5 percent standard has present, not merely prospective, effect. Defendant does not argue that Commerce officials have discretion to find dumping where the margin is less than .5 percent.

■ The remaining exceptions to 5 U.S.C. § 553 are not relevant. A *de minimis* rule would not "clearly and directly" involve a "foreign affairs function" under section 553(a)(1), *see Mast Industries v. Regan,* 8 CIT ——, 596 F.Supp. 1567, 1580–83 (1984). Nor is the "good cause" exception, section 553(b)(B), applicable since there has been no finding by Commerce that the exception applies.

Since the .5 percent standard has not been promulgated in accordance with the notice and comment procedures of the APA, and since it is not within any of the exceptions to those procedures, the Court holds that the standard is not a "rule".

■ Even though there is no "rule" that margins less than .5 percent are *de minimis,* Commerce may find that margins of approximately .45 percent are *de minimis* in this investigation. To do this Commerce must explain the basis for its decision. *See Motor Vehicle Manufacturers Ass'n. of the United States v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 48–49, 103 S.Ct. 2856, 2869–70, 77 L.Ed.2d 443 (1983); *Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973); *SCM Corp. v. United States,* 84 Cust.Ct. 227, 236–37, C.R.D. 80–82, 487 F.Supp. 96, 103–04 (1980). *See Local 777, Democratic Union Organizing Comm. v. NLRB,* 603 F.2d 862, 882 (D.C. Cir.1978).

Commerce has recognized that margins under .5 percent may not be *de minimis.* In 1981 Commerce, continuing previous De-

partment of Treasury determinations in the case, found that a .37 percent subsidy on fasteners from Japan was not *de minimis* when compared with the duties on the merchandise, .7 and .2 percent *ad valorem. Certain Fasteners From Japan*, 46 Fed. Reg. 53484 (1981).

Small margins may be important. Duties on the tubes for tires other than bicycle tires, classifiable under item 772.60, Tariff Schedules of the United States, are currently 3.9 percent. The United States negotiated staged reductions in duty for the merchandise by as little as .1 percent per year during the period 1980–1986. *See* Proclamation No. 4707, 44 Fed.Reg. 72348, 72527 (1979). Should Commerce choose to disregard the drawback adjustment, it must explain why the resulting margins of approximately .45 percent are *de minimis* in this investigation.

**Conflicting Tube Weight Determinations**

Intervenors paid Korea duty and defense tax when they imported synthetic rubber and other raw materials into Korea. Some of the materials were used in the manufacture of the tubes in this case. Pursuant to Korean law intervenors were entitled to a rebate of the duty and tax imposed on the raw materials used in making the tubes when the merchandise was exported from Korea.

The parties disagree on the tube weights Korea used in assessing the rebate. Plaintiffs claim Korea assessed the rebate on the basis of higher invoice and packing list weights supplied by intervenors rather than lower weights Commerce verified in making merchandise adjustments. Intervenors argue that Korea calculated the rebate on the basis of lower tube weights. Commerce does not indicate which weights Korea used in calculating the rebate; in its final determination Commerce says only that a drawback adjustment was made. 49 Fed.Reg. at 26781.

Defendant argues that the tube weights are irrelevant to the drawback adjustment under the antidumping law. Defendant says Commerce need only verify the amount of rebate received by intervenors.

The Court is concerned that the negative determination may have resulted from the use of conflicting sets of weights.

Under the antidumping law dumping margins for imported merchandise are calculated by comparing determinations of foreign market value and United States price. *See* 19 U.S.C. § 1673 (1982 & Supp. II 1984). Upward and downward adjustments are made to foreign market value and United States price pursuant to statutory provisions. To prevent dumping margins from arising because the exporting country rebates import duties and taxes for raw materials used in exported merchandise, the antidumping law provides for an offsetting adjustment in the calculation of United States price. Under section 1677a(d)(1)(B), United States price must be increased by "the amount of any import duties *imposed* by the country of exportation which have been rebated." (Emphasis added). This amount must be verified. 19 U.S.C. § 1677e(a).

Congress has not directed Commerce to adjust United States price merely by the amount of the rebate received by the foreign producer; Commerce must adjust the United States price by the amount of duty imposed by the home market government on raw materials rebated because of merchandise exported to the United States. *See Color Television Receivers From Korea; Final Results of Administrative Review of Antidumping Duty Order*, 49 Fed. Reg. 50420, 50428 (Comment 33). The Court knows of no way, and none has been proposed, for Commerce to correctly allocate duties "imposed" on the raw materials imported into Korea to the tubes exported from Korea to the United States that does not involve determining the weights of the tubes.

■ The Court holds that Commerce necessarily must make a finding as to the weights of the merchandise when it adjusts United States prices pursuant to section 1677a(d)(1)(B). The failure of Commerce to state those weights, which constitutes the factual basis for a determination under sec-

tion 1677a(d)(1)(B), leaves the record in this investigation incomplete.

Although Commerce is given great latitude in interpreting statutes it administers, our appellate court has recently affirmed that an agency interpretation may not contravene the legislative intent. *American Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed.Cir.1986). Accordingly, the Court remands the action for Commerce to state on the record the exported tube weights accepted as valid by Commerce, and how rebates to intervenors were allocated to the exported tubes for purposes of an adjustment under section 1677a(d)(1)(B).

■ The Court has previously held that Commerce acted within its discretion in weighing sample tubes to determine tube weights for making merchandise adjustments, 9 CIT ——, 622 F.Supp. at 1081–83. But if the weights accepted by Commerce for the section 1677a(d)(1)(B) adjustment are different than the weights verified by Commerce for the merchandise adjustment, and the use of these conflicting sets of weights results in a negative rather than affirmative determination, Commerce must choose one set of weights to use for both adjustments.

### Conclusion

The case is remanded to Commerce. Should Commerce choose to disregard the drawback adjustment, it must explain why the resulting margins of approximately .45 percent are *de minimis* in this investigation.

If Commerce adjusts United States price under section 1677a(d)(1)(B), Commerce is directed to supplement the record setting forth the tube weights used in calculating that adjustment. If the weights used by Commerce in making that adjustment were different than the weights verified by Commerce for merchandise adjustment purposes, and the use of these conflicting sets of weights results in a negative rather than affirmative determination, Commerce must choose one set of weights to use for both adjustments, and recalculate one of the adjustments and the dumping margins.

Consistent with the foregoing, Commerce is directed to supplement the record and make any necessary redetermination of intervenors' weighted-average dumping margins within thirty days from the date of this opinion.

So ordered.