WASHINGTON RED RASPBERRY COMMISSION, Red Raspberry Committee of the Oregon Caneberry Commission, Red Raspberry Committee of the Northwest Food Processors Association, Red Raspberry Member Group of the American Frozen Food Institute, Washington Red Raspberry Growers Association, North Willamette Horticultural Society, Rader Farms, Ron Roberts, and Shuksan Frozen Foods, Inc., Plaintiffs,

v.

UNITED STATES, United States Department of Commerce, and Malcolm Baldrige, In His Official Capacity as Secretary of Commerce, Defendants,

and

Abbotsford Growers Co-Operative Union, Jesse Processing Ltd., Mukhtiar & Sons Packers, Ltd. and East Chilliwack Fruit Growers Co-Operative, Intervenor-Defendants.

Consolidated

Court No. 85–06–00789.

United States Court of International Trade.

March 17, 1987.

Kilpatrick & Cody (Joseph W. Dorn and Anthony H. Anikeeff), Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (J. Kevin Horgan); and Office of Asst. General Counsel for Import Administration, U.S. Dept. of Commerce (Eileen P. Shannon), Washington, D.C., for defendants.

Cameron, Hornbostel & Butterman (William K. Ince and Caren Z. Turner), Washington, D.C., for intervenor-defendants Abbotsford Growers Co-op. Union, Jesse Processing Ltd. and Mukhtiar & Sons Packers, Ltd.

Bogle & Gates (Joel R. Junker and Christopher N. Weiss), Seattle, Wash., for intervenor-defendant East Chilliwack Fruit Growers Co-op.

### Opinion & Order

AQUILINO, Judge:

This consolidated case encompasses complaints by the plaintiff red raspberry growers, packers and associations (1) that the International Trade Administration, U.S. Department of Commerce ("ITA") unlawfully excluded the Abbotsford Growers' Co-operative Union from its final affirmative determination of sales at less than fair value in *Red Raspberries from Canada*, 50 Fed.Reg. 19,768 (May 10, 1985), and (2) that that determination contains erroneous weighted-average dumping margins.

The plaintiffs press some eight "methodological errors" [1] in support of their position that the dumping margins are incorrect. As to three of those specifications, counsel for the defendants state:

... [T]he Department concedes that certain mathematical errors were committed in the process of calculating the antidumping duty rates in the final determination of this investigation. Additionally, it is the Department's belief that there may have been other mathematical errors committed, to which plaintiffs have not alluded.

Consequently, the Department requests a remand of this determination after disposition of the other, disputed issues.... [2]

## A

The first of the disputed issues is whether the ITA erred in disregarding actual transaction prices paid by packers to growers for their raspberries.

Four processor/packers were investigated by the ITA. Intervenor-defendant Abbotsford Growers Co-operative Union ("Abbotsford Co-op") is an association of growers of fruits and vegetables in British Columbia who agree to deliver their produce to the cooperative for processing and marketing. The same is true of intervenor-defendant East Chilliwack Fruit Growers Co-operative ("EC Co-op"). These two cooperatives accounted for most of the exports to the United States of the merchandise investigated, namely, "fresh and frozen red raspberries packed in bulk containers and suitable for further processing" [3], for the period July 1, 1983 to June 30, 1984.

The other two packers, Jesse Processing Ltd. ("Jesse") and Mukhtiar & Sons Packers Ltd. ("Mukhtiar"), processed and exported raspberries grown, for the most part, on associated corporate farms *sub nom.* Jesse Farms Ltd. and Mukhtiar

Growers Ltd., respectively. The remainder of the fruit in question was sold to Jesse and Mukhtiar by independent growers. *See* Confidential Document ("ConfDoc") 3.

The petitioners below alleged that home market sales were below the respective costs of production of the merchandise. However, the ITA's final determination states that sufficient such sales of the Abbotsford Co-op and of Mukhtiar were found to be above their costs of production to enable the agency to use those sales for foreign market value. *See* 50 Fed.Reg. at 19,769 and 19,770. On the other hand, the ITA found that "all" or "substantial" home market sales of the EC Co-op and of Jesse were below their costs of production, and it therefore used constructed value for the foreign market value of the raspberries exported by those two packers. *Compare* 50 Fed.Reg. at 19,769 *with id.* at 19,770.

In determining whether sales in Canada were below the cost of production, the ITA necessarily attempted to verify each packer's cost in this regard. "This verification included the cost of growing the raspberries by the growers". *Id.* at 19,769. *Cf.* 19 C.F.R. § 353.7(b). Apparently, Abbotsford Co-op and EC Co-op each has hundreds of grower members, more than 100 of whom delivered red raspberries to the former during the period under review; more than 300 growers delivered their fruit to the EC Co-op. *See* ConfDoc 3. A number of the farmers delivered berries to both co-ops, implying thereby membership and thus shareholding in each. The ITA's final determination states that a "sample of ten growers was selected scientifically to represent the cost of raspberries supplied by Canadian growers" to the two cooperatives. 50 Fed.Reg. at 19,769. This sample was chosen to achieve a "95 percent confidence level that the information derived from [it wa]s representative of the population particularly regarding cost of produc-

**1.** Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Judgment Upon the Agency Record [hereinafter cited as "Plaintiffs' Memorandum"], pp. 15, 18.

**2.** Memorandum of Points and Authorities in Support of Defendants' Partial Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record [hereinafter cited as "Defendants' Memorandum"], pp. 41–42.

**3.** 50 Fed.Reg. at 19,768.

tion, its relation to price, and other anti-dumping investigation considerations". ConfDoc 25, p. 2. The ITA further stated that Jesse and Mukhtiar "purchase nearly all raspberries from their own farms. For them, we treated the cost of production of the farm as representative of the processor's cost of raspberries." 50 Fed.Reg. at 19,769.

Comment 4 of the petitioners below was to the effect that, if a grower's transaction price were higher than its cost of production, that price "should be used regardless of whether it includes profit and regardless of whether the grower is related to the processor." 50 Fed.Reg. at 19,770. The ITA responded to this comment as follows:

> ... Verification showed that all growers in the sample were related to processors. In accordance with § 353.6(b) of the Commerce Regulations, in our final analysis we cannot use transaction price because all growers are related to the processors. Therefore we used the average cost of production of the growers as the material cost for the processors where the sample was used. For JP and M & S the actual cost of production of Jesse Farms Ltd. and Mukhtiar and Sons Growers Ltd. were used for the respective processor's material cost. *Id.*

The regulation referred to, 19 C.F.R. § 353.6(b), provides, in pertinent part:

> *Transactions with related parties.* Direct or indirect transactions between related parties (as defined in section 773(e)(3) of the Act) may be disregarded if, in the case of any element of value required to be considered pursuant to paragraphs (a)(1), (a)(2) and (a)(3) of this section, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of the merchandise subject to the investigation.

It is premised by the provision of the Trade Agreements Act of 1979 that related-party transactions "may be disregarded", 19 U.S.C. § 1677b(e)(2).

Counsel for the defendants state that the regulation "unmistakably conveys discretion to the administering authority with respect to whether related party transactions should be disregarded",[4] but the ITA representation quoted above that it "cannot" use transaction price is clearly a misstatement of the law. *See, e.g., Connors Steel Company v. United States*, 2 CIT 242, 244–45, 527 F.Supp. 350, 354 (1981). Furthermore, while evidence in the record shows that Jesse and Jesse Farms Ltd. and Mukhtiar and Mukhtiar Growers Ltd. are "related parties" within the meaning of 19 U.S.C. § 1677b(e)(3), the same cannot be said of the cooperatives and those member growers selected by the ITA as determinative of the cost of the raspberries.

The statutory definitions of related parties arguably relevant to this action, to wit, subparagraphs (E) and (F) of the foregoing subsection (3), are as follows:

> (E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization.
>
> (F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.[5]

It is unclear from the record before the court whether membership in the cooperatives entails unequal shares therein. Whether unequal or equal however, there is no indication that any one of the sample growers who delivered raspberries to either (or both) of the cooperatives holds five percent or more of the outstanding shares. Indeed, it is not likely that the stock of those growers aggregates five percent in either cooperative. Furthermore, with regard to subparagraph (F), there is no showing that those growers control, are controlled by, or are under common control with, the cooperatives, which apparently

**4.** Defendants' Memorandum, p. 12.

**5.** These definitions fall within the purview of constructed value. While the ITA, in the end, did not use constructed value for either the Abbotsford Co-op or Mukhtiar, the agency did

disregard the prices paid to their growers in determining their costs of production. In other words, the growers' costs of production were used as the equivalent of the packers' costs.

are nothing more than convenient regimes for the marketing of farm produce.[6]

■ Thus, the court concludes that it was not in accordance with law within the meaning of 19 U.S.C. § 1516a(b)(1)(B) for the ITA to have disregarded the transactions between the cooperatives and their growers. The purpose of the law is to permit disregard of transactions where common control of the parties thereto distorts prices paid, but the record does not establish the existence of this phenomenon herein.

The fact that the Jesse corporations and the Mukhtiar corporations are related parties may permit disregard of their internal transactions, but only

> if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise under consideration. 19 U.S.C. § 1677b(e)(2)

■ The administrative record indicates that Mukhtiar purchased raspberries from six growers in addition to its related farm during the period under review and that the price paid to Mukhtiar Growers Ltd. was the top one. *See* ConfDoc 3. As for Jesse Farms Ltd., it received a price closer to the top of the range of prices paid to 16 unrelated growers. *See id.* In fact, the Jesse Farms Ltd. price equalled the weighted-average price for all the growers

who delivered to Jesse. *Cf. id.* Thus, the court is unable to conclude that the evidence before it satisfies the foregoing statutory standard for disregard of transaction prices and therefore that the ITA's decision not to use such prices in constructing costs of production for Jesse and for Mukhtiar[7] was in accordance with the law. While the defendants have broad discretion in enforcement of this law and their expertise is entitled to "tremendous deference"[8], they are not at liberty to disregard the statute's plain meaning. *See generally Al Tech Specialty Steel Corp. v. United States,* 10 CIT ——, 651 F.Supp. 1421, 1424–25 (1986), and cases cited therein.

**B**

The ITA's final determination states that payments to growers under British Columbia's Farm Insurance Income Program ("FIIP") "were included as offsets to cost since these benefits are attributable directly to raspberry production."[9] The petitioners below objected to this approach in their Comment 9. The ITA's response was adherence to its position. *See* 50 Fed.Reg. at 19,771.

Plaintiffs' present motion seeks judgment on this question. Their challenge, however, is contingent upon a negative resolution of the foregoing point on disregard of the prices paid to the growers. *See, e.g.,* Plaintiffs' Memorandum, pp. 15–16, 23. That is, the treatment of the FIIP benefits has import in the context of constructing

---

**6.** Counsel for the Abbotsford Co-op contend that it "acts as an agent for the growers, trying to obtain the best price for their product." Intervenors', Abbotsford Growers Co-operative Union, *et al.,* Brief in Response to Plaintiffs' Motion for Judgment Upon the Agency Record and in Support of Motion for Leave to Amend Intervenors' Answer to Include a Crossclaim for Revision of Dumping Margin Calculations [hereinafter cited as "Abbotsford Brief"], p. 16.

During oral argument on plaintiffs' motion, counsel for the defendants admitted that the co-operatives do not "fit neatly" into any of the statutory definitions of related parties. Rather, counsel sought refuge on the procedural point that the petitioners had not raised this issue below. The plaintiffs rebutted this argument, persuasively, through their claim that there had been no reason to raise it below in view of past ITA precedent and the absence of factual justifi-

cation to disregard the prices paid to the growers.

As for the attempts by counsel for the cooperatives to equate their relationships to the growers as that of agent and principal, an agent does not normally control price. If the growers are like other innumerable corporate stockholders, they do not control price either.

**7.** The court notes in passing that review of ConfDoc 44 indicates that the costs of the raspberries constructed were 26 and seven percent lower than the respective transaction prices.

**8.** *Smith-Corona Group, Consumer Products Division, SCM Corp. v. United States,* 713 F.2d 1568, 1582 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

**9.** 50 Fed.Reg. at 19,769. The "benefits" referred to also included government wage rebates.

the growers' costs of production, which this court has concluded was inappropriate. Hence, plaintiffs' point is no longer pressing.

If it still were, the court notes that *Al Tech Specialty Steel Corp. v. United States, supra,* concludes that countervailing-duty law should not be applied to a question such as this and that the government's interpretation of 19 U.S.C. § 1677b(e)(1) is not unreasonable.

### C

In constructing the costs of the raspberries for the packers, the ITA, over the petitioners' protestations,

> excluded Canadian packing costs because these costs are not part of the cost of the merchandise sold to the United States. We added the cost of United States packing in accordance with section 773(e)(1)(C) of the Act. 50 Fed.Reg. at 19,770.

The plaintiffs contend that the pails and the drums which were used to pack the raspberries in bulk were "materials" within the meaning of subparagraph (A) of the referenced constructed-value section of the 1979 act and that, as such, their respective costs should have been included thereunder. This court concurs.

■ Counsel for the defendants argue at page 30 of their memorandum that "[r]aspberries must be placed in containers such as pails and drums before they can be shipped to the United States, or the result becomes raspberry juice, or compote, at least." This is, precisely, the point: when the merchandise is delicate fruit inherently incapable of commercial survival, standing alone, and its intended movement in trade is in its natural form, then the cost of primary containers used is not "incidental"

within the meaning of subparagraph (C) of 19 U.S.C. § 1677b(e)(1).

■ The court finds that the 28–pound pails and the 400–pound drums containing the "fresh and frozen red raspberries packed in bulk ... and suitable for further processing" were primary containers and an integral part of that merchandise [10], and the court concludes that the ITA's failure to add their costs to the costs of the raspberries was not in accordance with law.[11]

### D

As indicated in the point A, *supra,* the petitioners below failed to persuade the ITA to rely in the ultimate on constructed foreign market value for either the Abbotsford Co-op or Mukhtiar. Plaintiffs' motion for judgment on the record takes the position that it was incorrect for the agency not to have done so, specifically, the ITA (1) "erred by comparing the price of each U.S. sale with the weighted-average price of sales in the Canadian market over 12–months"[12] and (2) "erred by comparing sales of pails and drums". Plaintiffs' Memorandum, p. 36.

As to the first specification, the plaintiffs contend that the ITA

> should have compared U.S. sales prices with Canadian monthly weighted-average sales prices. In those months when there were no appropriate home market sales to compare with U.S. sales, the ITA should have used constructed value. *Id.*

They rely on *Fall-Harvested Round White Potatoes from Canada,* 48 Fed.Reg. 51,669 (Nov. 10, 1983), wherein the ITA had modified its "traditional comparison methodology"[13] in order to accommodate "highly variable pricing"[14] associated with that produce.

The defendants counter that their normal practice in fair-value investigations is to

---

**10.** An example of a container in this context which would be "incidental" rather than "integral" would be a crate used to ship a number of the pails or even the drums.

**11.** In reaching this conclusion, the court has not read or relied on a second Supplemental Brief in Support of Plaintiffs' Motion for Judgment Upon the Agency Record, which was transmitted to the court in an untimely motion for leave

to file it, since that motion of the plaintiffs must be denied on the ground indicated.

**12.** Plaintiffs' Memorandum, p. 34.

**13.** 48 Fed.Reg. at 51,673.

**14.** 48 Fed.Reg. at 51,672.

use the weighted-average of homemarket sales prices during the entire periods of investigation and that this practice is of long standing. They refer the court to *Clear Sheet Glass From Japan*, 47 Fed. Reg. 14,506, 14,507 (April 5, 1982), and *Color Television Receivers From Taiwan*, 49 Fed.Reg. 7,628, 7,636 (March 1, 1984).

Section 615(1) of the Trade and Tariff Act of 1984, Pub.L. No. 98–573, 98 Stat. 2948, 3036–37, amended 19 U.S.C. § 1677b(a)(1) to state that the foreign market value of imported merchandise

shall be the price, at the time such merchandise is first sold within the United States by the person for whom (or for whose account) the merchandise is imported to any other person who is not described in subsection (e)(3) of this section with respect to such person—

(A) at which such or similar merchandise is sold, or, in the absence of sales, offered for sale in the principal markets of the country from which exported, in the usual commercial quantities and in the ordinary course of trade for home consumption....

Self-evidently, time is (and has been) an element of this provision, but it is not one which mandates the restrictive reading the plaintiffs posit. A regulation governing determination of dumping states, in pertinent part:

§ 353.20 Sales at varying prices.

(a) Where the prices of the sales which are being examined for a determination of foreign market value vary (after allowance provided for in §§ 353.14, 353.-15, 353.16, and 353.19), *the determination of foreign market value normally will be based upon the weighted average of the sales prices of all merchandise used to determine foreign market value;* provided that where sales are made at different levels of trade, the calculation of foreign market value, in accordance with § 353.19, will be on the basis of sales made at the same or nearest comparable level of trade as those at which the sales in question to the United States are made.

(b) If not less than 80 percent of all sales in the home market (or to third countries, if appropriate) during the period of investigation were made at the same price, weighted averages of all sales will not be used and foreign market value will be based upon the sales at that price.

(c) If the provisions of paragraph (b) of this section do not apply and weighted averages of the prices are determined to be inappropriate, the Secretary will use any other method for determining value which he deems appropriate....[15]

Thus, there is a clear legal underpinning to the approach taken by the ITA herein, one which the facts also support. The court has reviewed the listings of Canadian sales of the Abbotsford Co-op and of Mukhtiar contained in ConfDoc 45 which show that less than 80 percent of those sales by each packer were made at the same price. Moreover, the individual prices were not highly variable, as was the case with the potatoes from Canada and which led the ITA to use the periodic method of comparison the plaintiffs propose. Normally, however, as the above regulation makes clear, the sales prices of all the merchandise during the entire period of investigation are to be averaged, and the ITA was within the bounds of this approach here.

Plaintiffs' second specification of error gives rise to the same sort of issue, to wit, not whether the ITA could have determined foreign market value relying on the method proposed, but rather whether the agency was required to accept the petitioners' point, which was:

*Comment 6:* Raspberries packed in pails should not be compared with raspberries packed in drums. Raspberries packed in pails receive a higher price than raspberries packed in drums.

---

**15.** 19 C.F.R. § 353.20 (emphasis added). The other regulations referred to in subparagraph (a), namely, sections 353.14, 353.15, 353.16 and 353.19 of Title 19, C.F.R., apply to differences in quantities, differences in circumstances of sale, differences in physical characteristics, and level of trade, respectively.

Where a similar pail-to-pail, drum-to-drum merchandise comparison cannot be made, constructed value should be used.

*DOC Position:* The product is identical whether packed in drums or pails. We deducted home market packing from the foreign market value and then added the packing for the U.S. sale being compared. 50 Fed.Reg. at 19,771.

The court cannot agree that the product is identical whether packed in drums or in pails. On the other hand, both 19 U.S.C. § 1677b(1)(A) and 19 C.F.R. § 353.3(a) contemplate foreign market value of "such or similar merchandise", which is defined by 19 U.S.C. § 1677(16) in the following alternative ways:

(A) The merchandise which is the subject of an investigation and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.

(B) Merchandise—

(i) produced in the same country and by the same person as the merchandise which is the subject of the investigation,

(ii) like that merchandise in component material or materials and in the purposes for which used, and

(iii) approximately equal in commercial value to that merchandise.

(C) Merchandise—

(i) produced in the same country and by the same person and of the same general class or kind as the merchandise which is the subject of the investigation,

(ii) like that merchandise in the purposes for which used, and

(iii) which the administering authority determines may reasonably be compared with that merchandise.

Given these definitions, this court cannot, and therefore does not, conclude that it was not in accordance with law for the ITA to have determined the foreign market value of the red raspberries from the Abbotsford Co-op and from Mukhtiar irrespective of whether in pails or in drums.

E

The final issue contested by the defendants [16] arises out of the ITA's decision not to follow its rule governing conversion of currencies, 19 C.F.R. § 353.56(a), which is based on section 522 of the Tariff Act of 1930, 31 U.S.C. § 5151. The ITA chose not to comply with this law, as explained in the following response to a comment of the respondents below:

*Comment 1:* The Canadian dollar declined by almost 7 percent in value compared with the U.S. dollar over the investigative period. The DOC used only the third quarter exchange rate to convert Canadian dollar values into U.S. dollar values. Current DOC regulations require conversion of foreign currencies as of the date of exportation, if an exporter's sales price is the basis of comparison. However, recent amendments to the antidumping statute establish that foreign market value must be determined at the time imported merchandise is first sold by the importer to an unrelated purchaser in an exporter's sales price situation. Therefore, foreign market value should be determined at the time of sale and converted to U.S. dollars at the exchange rate on the date of sale.

*DOC Position:* We agree that, if possible, the exchange rate in effect at the time of the U.S. sale should be used to convert foreign currency to U.S. dollars. This appears to be more consistent with section 615 of the Trade and Tariff Act of 1984 [1984 Act]. Therefore, we chose

---

16. As indicated above, page 2, the defendants do not contest certain issues raised by the plaintiffs, to wit, (F) "The ITA Erred By Failing To Include All Positive Potential Uncollected Dumping Duties In Calculating The Weighted-Average Dumping Margins For East Chilliwack And For Other Manufacturers/Producers/Exporters"; (G) "The ITA Erred In Calculating And/Or Expressing Weighted-Average Dumping Margins for Abbotsford, Mukhtiar, and East Chilliwack"; and (H) "The ITA Erred By Failing To Use Constructed Value For The Determination Of Foreign Market Value As To Abbotsford And Mukhtiar". Plaintiffs' Memorandum, pp. 43–46.

not to follow § 353.56(a)(2) of the Commerce regulations which predates the 1984 Act. 50 Fed.Reg. at 19,771.

The gist of defendants' position now is that this

decision was the only appropriate one in light of the mandate of section 615 of the Trade and Tariff Act of 1984. To have done otherwise would have conflicted with the Act, and an agency is not allowed to interpret its regulations in a manner that conflicts with statutory law. Defendants' Memorandum, p. 40.

■ Of course, it is axiomatic that an administrative regulation should not conflict with an underlying statute[17], but it is somewhat disingenuous for the defendants to attempt to undermine their rule, 19 C.F.R. § 353.56(a), based squarely as it is on a statute in existence for more than half a century. Nevertheless, the will of Congress, as expressed in section 626 of the Trade and Tariff Act of 1984, Pub.L. No. 98–573, 98 Stat. 2948, 3042–43, was that section 615 thereof take effect on the date of enactment, October 30, 1984—or well before the ITA final determination now under review herein.

■ It could be correct, as the plaintiffs argue, that "Congress may have erred as a policy matter by failing to amend Section 522 to conform more closely with other provisions of the 1984 act"[18], but it does not necessarily follow, as they also imply, that the ITA cannot apply the new law until Congress perfects the old. As indicated, there is no such proscription in the 1984 statute. Moreover, the court concludes that the ITA's reliance on section 615 was an appropriate exercise of its authority to determine foreign market value. That is, it would now be anomalous for the time of the first sale of imported merchandise within the United States to an unrelated purchaser to be the point of reference for foreign market value in accordance with section 615, while converting the foreign currency involved "as of the date of exportation" within the meaning of section 353.56(a)[19] which may have been months or even calendar quarters earlier.

■ The plaintiffs argue that an agency is bound by its own regulations. This, of course, is true, but only so long as Congress does not act to modify the statutory framework within which they function. Moreover, the court does not understand the plaintiffs to argue against retroactive application of the statute, no doubt because they understand the complexity of this question in the context of legislation. *See, e.g.,* Graetz, *Legal Transitions: The Case of Retroactivity in Income Tax Revision,* 126 U.Pa.L.Rev. 47 (1977). Indeed, it is difficult to discern any form of reliance by them on what is admittedly a longstanding statute and rule.

### Motions as to Cross-Claims

At the same time as the Abbotsford Brief was filed in opposition to plaintiffs' motion for judgment on the agency record, counsel for the three intervenor-defendants represented therein interposed a motion for leave to amend their answer to include a cross-claim against the defendants. The proposed claim is pleaded in three counts and seeks remand to the ITA "with instructions that the ITA recalculate dumping margins and correct any and all mathematical errors", to quote from its last prayer for relief.

The Abbotsford Co-op, Jesse and Mukhtiar obtained leave to intervene in these consolidated case(s) and file their answer(s) as parties defendant months after the plaintiffs had commenced the present pro-

---

17. *See, e.g., Melamine Chemicals, Inc. v. United States,* 732 F.2d 924, 928 (Fed.Cir.1984), and the cases cited therein.

18. Plaintiffs' Reply Brief, p. 27.

19. Intervenor-defendants' attempted reliance on subsection (b) of this rule is misplaced, as that provision entails special rules for "sustained changes in prevailing exchange rates" and differences between prices "resulting solely from such exchange rate fluctuations". *See Melamine Chemicals, Inc. v. United States, supra* note 17.

While the value of the Canadian to the U.S. dollar did decline during the period of investigation [*see, e.g.,* RecDoc 108 at A–54], the decrease was linear and slight; there was no fluctuation, and certainly not the "volatile changes" experienced in *Melamine. See* 732 F.2d at 932.

ceedings. By then, the time prescribed by statute within which these three packers could have brought an action of their own against the defendants had expired. This fact, which the intervenor-defendants do not dispute [20], has led both the plaintiffs and the defendants to oppose the motion to amend on jurisdictional grounds. This opposition is well-founded.

Unlike the three movants, the EC Co-op had commenced a timely action in its own right against the defendants, challenging the ITA's final determination in CIT No. 85-07-00978. In that case, the petitioners below (plaintiffs here) obtained leave to intervene as parties defendant, and they subsequently sought affirmative relief therein against the defendants, initially through their brief in opposition to the EC Co-op's motion for judgment on the agency record and then by way of formal motion to file an amended answer.

This court granted the EC Co-op's motion to strike the claim for relief and denied the intervenor-defendants' motion to amend in *East Chilliwack Fruit Growers Co-operative v. United States*, 11 CIT ——, 655 F.Supp. 499 (1987), in view of *Nakajima All Co., Ltd. v. United States*, 2 CIT 170 (1981) [Available on WESTLAW, DCTU database] (an intervening party cannot contest an antidumping-duty order through a cross-claim which does not comport with the time limitations imposed by 19 U.S.C. § 1516a). The court also relied on *Fuji Electric Co., Ltd. v. United States*, 7 CIT 247, 595 F.Supp. 1152 (1984), and on *Georgetown Steel Corporation v. United States*, 801 F.2d 1308, 1312 (Fed.Cir.1986), wherein the Court of Appeals stated:

> Since section 1516(a)(2)(A) specifies the terms and conditions upon which the United States has waived its sovereign immunity in consenting to be sued in the Court of International Trade, those limitations must be strictly observed and are not subject to implied exceptions.... If a litigant fails to comply with the terms

upon which the United States has consented to be sued, the court has no "jurisdiction to entertain the suit." [citations omitted]

It is clear that this court does not have jurisdiction to entertain intervenor-defendants' proposed cross-claim, and their motion for leave to amend their answer to include it must therefore be denied.

The same conclusion of law warrants granting a motion by the plaintiffs to strike part II.A.1 (pages 1–4) of the EC Co-op's memorandum in opposition to their motion for judgment on the record. The plaintiffs, joined by the defendants, contend that the referenced part, which alleges that the ITA failed to convert the EC Co-op's foreign market value into U.S. dollars, amounts to an untimely cross-claim. The court concurs, not only as a result of examination of the memorandum itself, the conclusion of which (pages 34–35) prays for a remand on the issue, but also because the EC Co-op subsequently obtained leave to amend its own complaint to include the same claim, which has already been remanded to the ITA.

\*　\*　\*　\*　\*　\*

Now, therefore, in view of the foregoing, it is

ORDERED that plaintiffs' motion pursuant to CIT Rule 56.1 for judgment upon the agency record be, and it hereby is, granted on points lettered A and C thereof and on points F, G and H to the extent conceded by the defendants; and it is further

ORDERED that plaintiffs' motion pursuant to CIT Rule 56.1 for judgment upon the agency record be, and it hereby is, denied on points lettered B, D and E thereof; and it is further

ORDERED that this matter be, and it hereby is, remanded to the International Trade Administration, U.S. Department of Commerce for further proceedings consistent with the above opinion on the aforesaid

---

20. *See* Defendant Intervenors', Abbotsford Growers Co-Operative Union, *et al.*, Supplemental Brief in Support of Motion to Amend Intervenors' Answer, p. 2.

points A, C, F, G and H; and it is further hereby

ORDERED that the defendants file with the court their redeterminations of the points remanded within 45 days hereof, that the plaintiffs have 15 days thereafter in which to respond and that the defendants and the intervenor-defendants have ten days to reply thereto; and it is further

ORDERED that the other outstanding motions of the parties be, and they hereby are, disposed of in accordance with the above opinion.