859 F.2d 898
 10 ITRD 1753
 WASHINGTON RED RASPBERRY COMMISSION, Red Raspberry Committee
of the Oregon Caneberry Commission, Red Raspberry Committee
of the Northwest Food Processors Association, Red Raspberry
Member Group of the American Frozen Food Institute, Radar
Farms, Ron Roberts, Shuksan Frozen Foods, Inc., Washington
Red Raspberry Growers Association, and North Willamette
Horticultural Society, Plaintiffs/Appellants,
v.
The UNITED STATES, United States Department of Commerce, and
the Honorable Malcolm Baldridge, Secretary, United
States Department of Commerce,
Defendants/Cross-Appellants,
and
Abbotsford Growers Co-operative Union and Chilliwack Fruit
Growers Co-operative, Defendants.
 Nos. 88-1076, 88-1107.
 United States Court of Appeals,
Federal Circuit.
 Oct. 13, 1988.
 
 Michael D. Reynolds, Asst. Sol. Gen., State of Or., argued for plaintiffs/appellants. With him on the brief were Dave Frohnmayer, Atty. Gen. and Virginia Linder, Sol. Gen. Also on the brief were Ken Eikenberry, Atty. Gen., Maureen Hart, Asst. Atty. Gen., State of Wash., Joseph W. Dorn and Walter E. Spiegel, Kilpatrick and Cody, Washington, D.C.
 M. Martha Ries, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendants/cross-appellants. With her on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Velta A. Melnbrencis, Asst. Director. Also on the brief was Lisa B. Koteen, Acting Senior Counsel for Intern. Trade, Office of the Deputy Chief, Counsel for Import Admin., U.S. Dept. of Commerce, of counsel. William K. Ince and Gregory J. Bendlin, Cameron, Hornbostel & Butterman, Washington, D.C., were on the brief for defendants.
 Before SMITH and NEWMAN, Circuit Judges and SKELTON, Senior Circuit Judge.
 EDWARD S. SMITH, Circuit Judge.
 
 
 1
 In this antidumping case, appellants, Washington Red Raspberry Commission and other domestic raspberry growers[1] (collectively WRRC), appeal the decision and order of the United States Court of International Trade, dated September 8, 1987, sustaining an antidumping determination by the United States International Trade Administration (ITA) on certain red raspberries imported from Canada.[2] The United States (Government) cross-appeals. We affirm.[3]
 
 Issues
 
 2
 On appeal, we address the following issues:
 
 
 3
 1. Whether the Court of International Trade erred by sustaining the ITA's final determination excluding Abbotsford from its antidumping duty order on the basis of the ITA's finding that Abbotsford's dumping margin was de minimis;
 
 
 4
 2. Whether the ITA, in converting the foreign currency for purposes of making price comparisons in the investigation, erred by using the exchange rates in effect at the time of United States sales of red raspberries; and
 
 
 5
 3. Whether the Court of International Trade erred by determining that the pails and drums in which the raspberries are packed formed an integral part of the merchandise, and that the cost of these items be included as a cost of materials within the constructed value definition.
 
 Background
 
 6
 On July 3, 1984, WRRC filed an antidumping petition with the ITA alleging sales at less than fair value of fresh and frozen red raspberries imported into the United States from Canada. On July 23, 1984, the ITA initiated its antidumping investigations and, on December 18, 1984, preliminarily determined that red raspberries from Canada were being, or were likely to be, sold in the United States at less than fair value.[4]
 
 
 7
 On May 10, 1985, the ITA published its final determination, assessing antidumping duties on certain red raspberries imported from Canada by East Chilliwack Fruit Growers Co-Operative (ECFG), Jesse Processing Ltd. (Jesse), and Mukhtiar and Sons Packers Ltd. (Mukhtiar).[5] In its final determination, the ITA used the "constructed value" method to compute foreign market value for two of the Canadian red raspberry exporters, namely ECFG and Jesse, because substantially all of their home market sales were below the cost of producing the raspberries. For the other two Canadian red raspberry exporters, Mukhtiar and Abbotsford, the foreign market value was based on home market sales. Abbotsford was excluded from the antidumping duty order because Abbotsford's weighted-average dumping margin of 0.19 percent was considered de minimis.
 
 
 8
 WRRC filed an action in the Court of International Trade, challenging the exclusion of Abbotsford from the final determination and alleging eight methodological errors by the ITA which resulted in lower dumping margins. The Court of International Trade, agreeing with WRRC's allegations, remanded the proceeding to the ITA (first remand) with instructions to recalculate the dumping margins.[6] On the first remand, the ITA calculated a weighted-average dumping margin for Abbotsford of 0.78 percent and, on that basis, concluded that Abbotsford should be included in the antidumping duty order.
 
 
 9
 Again before the Court of International Trade, Abbotsford objected to the ITA's determination on the first remand, alleging four clerical errors in the calculation of the dumping margins. The Court of International Trade was persuaded by Abbotsford's arguments and again remanded the matter to the ITA (second remand) with instructions to recalculate the dumping margins.[7] After correcting the four errors, the ITA found a 0.42 percent weighted-average dumping margin for Abbotsford, determined this amount de minimis, and excluded Abbotsford from the antidumping duty order. On September 8, 1987, the Court of International Trade sustained the ITA's determinations on the second remand and held that the ITA's determination to exclude Abbotsford from the antidumping duty order was supported by substantial evidence on the record and was otherwise in accordance with the law.[8]
 
 Analysis
 A. Statutory Framework
 
 10
 Under the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979,[9] if foreign merchandise is sold or is likely to be sold in the United States at less than its fair value to the material injury of a United States industry, then an antidumping duty shall be imposed, "in an amount equal to the amount by which the foreign market value exceeds the United States price for the merchandise."[10] The statute provides for several different methods of computation of both the foreign market value and the United States price. Both figures are subject to cost adjustments in an attempt to derive values at a common point in the chain of commerce, so that the values reasonably can be compared on an equivalent basis.[11]
 
 
 11
 The United States price is defined by statute as either the purchase price or the exporter's sales price, whichever is appropriate.[12] Purchase price, used where the importer is not related to the foreign producer, is "the actual or agreed-to price between the foreign producer and the independent importer, prior to the time of importation."[13] Exporter's sales price, used where the importer is a related party, is "the price at which the goods are eventually transferred in an arm's length transaction, whether from the importer to an independent retailer or directly to the public."[14]
 
 
 12
 Generally, foreign market value is computed by one of the following three methods:[15] (1) home market sales, (2) third country sales, or (3) constructed value.[16] Although the home-market-sales method is preferred, the statute provides that either third country sales or constructed value may be used where there are no such home market sales.[17] The constructed value is the sum of (1) the cost of materials and fabrication, (2) an amount for general expenses and profit, and (3) the cost of all containers, coverings, and other expenses incidental to placing the merchandise in condition, packed, and ready for shipment to the United States.[18]
 
 
 13
 The foreign market value and the United States price, once computed and adjusted by Commerce, are then compared. If the foreign market value exceeds the United States price for the merchandise, then an antidumping duty is imposed in the amount of the difference between the two values.[19]
 
 B. The Issues
 
 14
 1. The De Minimis Rule.
 
 
 15
 In the proceedings below, the ITA determined that the United States prices of fresh and frozen red raspberries from Canada, produced by Abbotsford, were less than the foreign market values of such or similar red raspberries. Abbotsford's weighted-average dumping margin finally was calculated by the ITA to be 0.42 percent. However, according to the ITA, because a dumping margin of 0.42 percent is de minimis, Abbotsford was excluded from the antidumping duty order. The Court of International Trade sustained the ITA's application of the de minimis rule, concluding that the ITA's determination was supported by substantial evidence on the record and otherwise was in accordance with the law.[20]
 
 
 16
 The appropriate standard of review of a final antidumping determination is limited to whether that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."[21] It is in view of this standard, that we review the determination before us.
 
 
 17
 WRRC argues that the ITA lacks statutory authority to ignore small dumping margins through its application of the de minimis rule. As support for its argument, WRRC contends that Congress has not expressly authorized the ITA to ignore de minimis or negligible dumping margins. We are not persuaded.
 
 
 18
 The de minimis concept[22] is well-established in federal law.[23] Federal courts and administrative agencies repeatedly have applied the de minimis principle in interpreting statutes, even when Congress failed explicitly to provide for the rule.[24] The ITA has long ignored de minimis dumping margins.[25] WRRC has given us no reason to disturb this practice.
 
 
 19
 Although we are not bound by the case law precedent of the Court of International Trade, we are in complete agreement with, and adopt as our own, the holding in Carlisle Tire and Rubber Co. v. United States[26] that the ITA may find that dumping margins less than 0.50 percent are de minimis, but only if the ITA explains the basis for its decision.[27] Accordingly, we must affirm the Court of International Trade's decision sustaining the ITA's application of the de minimis rule if we determine both that the record contains substantial evidence supporting the ITA's calculation of the dumping margin and that the record contains substantial evidence supporting the ITA's basis for its application of the de minimus rule.
 
 
 20
 WRRC argues that, assuming the de minimis rule may be applied, the ITA failed to follow the Court of International Trade's requirement, set forth in Carlisle, that the ITA explain with substantial evidence on the record why a 0.42 percent dumping margin is de minimis in this case. Rather, WRRC contends, the ITA seriously mischaracterized the administrative record and simply applied a bright line rule that dumping margins below 0.50 percent are de minimis. We disagree.
 
 
 21
 Here, in the second remand proceeding, the ITA stated that its "unbroken practice [is] to consider margins below 0.5% to be de minimis"; however, the ITA went on to cite several facts drawn from the record to support its conclusion that the 0.42 percent weighted-average dumping margin found for Abbotsford was de minimis. First, the ITA relied on findings made by the United States International Trade Commission (ITC) that the prices of the red raspberries are essentially a function of supply and, therefore, the raspberry growers have little or no ability to set their prices. Second, the ITA considered the fact that only a small percentage of Abbotsford's sales were at less than fair value.[28] Third, the ITA stated that Abbotsford's 0.42 percent dumping margin only had resulted in a truly negligible price advantage.[29]
 
 
 22
 We are of the opinion that the ITA did not seriously mischaracterize the record, as WRRC argues on appeal.[30] Rather, we conclude that there is substantial evidence supporting the conclusion of the ITA that Abbotsford should be excluded from the antidumping duty order.
 
 
 23
 2. Conversion of Foreign Currencies.
 
 
 24
 In its final determination, for the purpose of comparing the foreign market value with the United States price, the ITA converted the foreign market value into United States dollars by using the exchange rate in effect at the time of the sale of red raspberries in the United States, not at the time of exportation of the raspberries from Canada to the United States.[31] The ITA reasoned that currency conversion at the time of the United States sale "appears to be more consistent with section 615 of the Trade and Tariff Act of 1984 [19 U.S.C. Sec. 1677b (Supp. III 1985) ]."[32] The Court of International Trade upheld the ITA's reliance on section 615, concluding that such reliance was an appropriate exercise of the ITA's authority to determine foreign market value.[33]
 
 
 25
 WRRC, citing 19 C.F.R. Sec. 353.56(a),[34] argues that, where an exporter's sale price is used to establish the United States price, the foreign market value of the product is to be computed as of the date of exportation. On this basis, WRRC contends that the Court of International Trade erred by sustaining the ITA's calculations. This argument is not persuasive.
 
 
 26
 The Court of International Trade, in addressing this issue, concluded that[35]
 
 
 27
 it would now be anomalous for the time of the first sale of imported merchandise within the United States to an unrelated purchaser to be the point of reference for foreign market value in accordance with [19 U.S.C. Sec. 1677b], while converting the foreign currency involved "as of the date of exportation" within the meaning of [19 C.F.R. Sec. 353.56(a) ] [footnote omitted] which may have been months or even calendar quarters earlier.
 
 
 28
 We are in complete agreement with the Court of International Trade. Both the United States price and the foreign market value are subject to cost adjustments in an attempt to derive values at a common point in the chain of commerce, so that the values reasonably can be compared on an equivalent basis.[36] That is precisely what the ITA did in this case. The antidumping statute was amended in 1984, requiring comparison of foreign market value with exporter's sales price on the date of sale of the imported merchandise in the United States, and the ITA, in this case, was acting in accordance with the law by converting the foreign currency involved as of the date of the United States sale.
 
 
 29
 3. Pails and Drums.
 
 
 30
 The ITA, in calculating the constructed value of the red raspberries for the packers, "excluded Canadian packing costs because these costs [were] not part of the cost of the merchandise sold to the United States." Instead, the ITA, determining that these costs were "incidental" to the cost of the red raspberries, added the cost in accordance with 19 U.S.C. Sec. 1677b(e)(1)(C). The Court of International Trade reversed, concluding that "when the merchandise is delicate fruit inherently incapable of commercial survival, standing alone, and its intended movement in trade is in its natural form, then the cost of primary containers used is not 'incidental' within the meaning of subparagraph (C) of 19 U.S.C. Sec. 1677b(e)(1)." Rather, the Court of International Trade determined, the pails and drums containing the raspberries were primary containers and an integral part of the merchandise. On that basis, the Court of International Trade concluded that the pails and drums were "materials" within the meaning of section 1677b(e)(1)(A). We agree.
 
 
 31
 "Materials," pursuant to subsection (A), include those materials required to "permit the production of that particular merchandise in the ordinary course of business." Here, the merchandise in question are red raspberries in their natural form. The red raspberries could not exist in their natural form but-for the pails and drums. As recognized by the Court of International Trade, without these primary containers, the raspberries would become "raspberry juice, or compote, at least." Accordingly, because without the pails and drums the raspberries could not exist in their natural form, the costs of the pails and drums must be included under subsection (A).
 
 
 32
 The Government, apparently equating drums and pails with "packing costs," cites numerous ITA decisions as supporting its argument that the ITA consistently has treated "packing costs" as costs of containers and coverings under subsection (C) rather than as materials under subsection (A). On this basis, the Government would have us reverse the Court of International Trade's decision on this issue. We are not persuaded.
 
 
 33
 We cannot hold, as the Government would have us, that any time a product is held in a container, the cost of that container must be characterized either as a packing cost or as an expense incidental to placing that product into commerce and included under subsection (C). Rather, when a product cannot exist in its natural form but-for the container, that container's cost may be included under subsection (A).
 
 CONCLUSION
 
 34
 In view of the foregoing, we hold that the Court of International Trade correctly sustained the ITA's application of the de minimus rule in this case. In addition, we conclude that the Court of International Trade properly sustained the ITA's calculation of the foreign market value. Finally, we hold that the Court of International Trade did not err by characterizing the pails and drums as materials and including their cost under subsection (A).
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 The other domestic raspberry growers involved in this action are Red Raspberry Committee of the Oregon Caneberry Commission, Red Raspberry Committee of the Northwest Food Processors Association, Red Raspberry Member Group of the American Frozen Food Institute, Radar Farms, Ron Roberts, Shuksan Frozen Foods, Inc., Washington Red Raspberry Growers Association, and North Willamette Horticultural Society
 
 
 [2]
 Washington Red Raspberry Comm'n v. United States, 670 F.Supp. 1004 (Ct. Int'l Trade 1987) (WRRC III ). Antidumping duties were assessed against three of the four investigated Canadian processors/packers of red raspberries, namely East Chilliwack Fruit Growers Coop., Jesse Processing Ltd., and Mukhtiar and Sons Packers Ltd
 
 
 [3]
 WRRC appeals the Court of International Trade's September 8, 1987, decision and order affirming the ITA's determination, which determination excluded Abbotsford from the ITA's antidumping duty order because the dumping margin for Abbotsford was de minimis. The Government cross-appeals that part of the Court of International Trade's March 17, 1987, order, which order remanded the matter to the ITA with instructions to recalculate the dumping margins. In the March 17, 1987, order, the Court of International Trade determined that the ITA erroneously calculated the constructed values by failing to include the cost of pails and drums within the cost of the merchandise
 
 
 [4]
 Red Raspberries from Canada: Preliminary Determination of Sales at Less Than Fair Value, 49 Fed.Reg. 49,129 (1984)
 
 
 [5]
 Red Raspberries from Canada: Final Determination of Sales at Less Than Fair Value, 50 Fed.Reg. 19,768 (1985)
 
 
 [6]
 Washington Red Raspberry Comm'n v. United States, 657 F.Supp. 537 (Ct. Int'l Trade 1987) (WRRC I ). On appeal to this court, the Government argues that the Court of International Trade erred in WRRC I by determining that the pails and drums in which the raspberries were packed formed an integral part of the merchandise, and should have been included as a cost of materials within the constructed value definition. The Government contends that the cost of the pails and drums should have been treated as a packing cost
 
 
 [7]
 Washington Red Raspberry Comm'n v. United States, Court No. 85-06-00789 (Ct. Int'l Trade June 26, 1987) (WRRC II )
 
 
 [8]
 WRRC III, 670 F.Supp. at 1004
 
 
 [9]
 19 U.S.C. Secs. 1673 et seq. (1982)
 
 
 [10]
 Id. Sec. 1673
 
 
 [11]
 Smith-Corona Group v. United States, 713 F.2d 1568, 1571-72 (Fed.Cir.1983), cert. denied, 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984)
 
 
 [12]
 19 U.S.C. Sec. 1677a(a)
 
 
 [13]
 Smith-Corona Group, 713 F.2d at 1572
 
 
 [14]
 Id
 
 
 [15]
 19 U.S.C. Sec. 1677b
 
 
 [16]
 Smith-Corona Group, 713 F.2d at 1572-73
 
 
 [17]
 19 U.S.C. Sec. 1677b(a)(2)
 
 
 [18]
 19 U.S.C. Sec. 1677b(e)(1)
 
 
 [19]
 19 U.S.C. Sec. 1673
 
 
 [20]
 WRRC III, 670 F.Supp. 1004
 
 
 [21]
 19 U.S.C. Sec. 1516a(b)(1)(B); see Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 936 (Fed.Cir.1984)
 
 
 [22]
 The Latin maxim de minimis non curat lex is the doctrine that "[t]he law does not care for, or take notice of, very small or trifling matters." BLACK'S LAW DICTIONARY 388 (5th ed. 1979)
 
 
 [23]
 For example, Sec. 132 of the Internal Revenue Code of 1986 permits the administering authority to exclude from gross income any employee fringe benefits that are found to be de minimis. 26 U.S.C. Sec. 132(a) (1988). Further, Sec. 132 defines de minimis benefits as those that are so small as to make accounting for them unreasonable or administratively impracticable. 26 U.S.C. Sec. 132(e)(1)
 
 
 [24]
 See, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692-93, 66 S.Ct. 1187, 1194-95, 90 L.Ed. 1515 (1946) (allowing application of the de minimis rule to the Fair Labor Standards Act for insubstantial and insignificant periods of time); NLRB v. Fainblatt, 306 U.S. 601, 606-07, 59 S.Ct. 668, 671-72, 83 L.Ed. 1014 (1939) (indicating the NLRB could apply the de minimis maxim in accordance with congressional intent even where the language of the National Labor Relations Act is absolute); Monsanto Co. v. Kennedy, 613 F.2d 947, 955-56 (D.C. Cir.1979) (agency has the authority, deriving from administrative discretion inherent in the statutory scheme, to deal with de minimis situations and exempt food additives from regulation despite the strictly literal terms of the statutory definition); ASG Indus., Inc. v. United States, 610 F.2d 770, 776 (CCPA 1979) (indicating that the de minimis concept was applicable in determining whether a bounty or grant was paid upon the manufacture or production of merchandise, so as to require the imposition of a countervailing duty); Varsity Watch Co. v. United States, 34 CCPA 155, 161-63 (1947) (discussing and acknowledging the validity of the de minimis rule in tariff classification cases but finding more than a de minimis amount of gold present in a watch)
 
 
 [25]
 See, e.g., Certain Fresh Cut Flowers from Peru, 52 Fed.Reg. 7000 (1987) (0.47% ad valorem weighted-average dumping margin held de minimis ); Certain Fresh Cut Flowers from Ecuador, 52 Fed.Reg. 2128 (1987) (0.46% ad valorem weighted-average dumping margin held de minimis); Certain Welded Carbon Steel Pipe & Tube Products from Turkey, 51 Fed.Reg. 13,044 (1986) (0.46% ad valorem weighted-average dumping margin held de minimis ); Acrylic Film, Strips & Sheets, at Least 0.030 Inch in Thickness from Taiwan, 49 Fed.Reg. 10,968 (1984) (0.42% ad valorem weighted-average dumping margin held de minimis ); Certain Steel Pipes & Tubes from Japan, 48 Fed.Reg. 1206 (1983) (weighted-average dumping margins of 0.27 and 0.02% ad valorem held de minimis ); Certain Iron Metal Castings from India, 46 Fed.Reg. 39,869 (1981) (0.40% ad valorem weighted-average dumping margin after taking into account currency fluctuations held de minimis )
 
 
 [26]
 Carlisle Tire & Rubber Co. v. United States, 634 F.Supp. 419, 423-24 (Ct. Int'l Trade 1986)
 
 
 [27]
 Id
 
 
 [28]
 The ITA determined that only 17% of Abbotsford's sales compared were at less than fair value, with dumping margins ranging from 0.9% to 4.2%. The ITA investigated the 1983-84 crop year, the period from July 1, 1983, to June 30, 1984
 
 
 [29]
 The ITA found that a 0.42% margin would correspond to a price advantage of approximately two-tenths of a cent per pound on those few sales of raspberries at prices below fair market value
 
 
 [30]
 WRRC also argues that the ITA's recently promulgated rule establishing 0.5% dumping margins as de minimis (19 C.F.R. Sec. 353.24 (1987)) is unreasonable and does not validate the decision in this case. We do not reach this issue, because the rule did not become effective until 8 days after the decision of the trial court. Further, neither the ITA nor the Court of International Trade based its decision on the rule
 
 
 [31]
 The ITA based foreign market value on either constructed value or the prices paid for raspberries sold in Canada at the time of United States sales to unrelated purchasers, in accordance with Sec. 773(a)(1) of the Tariff Act of 1930, 19 U.S.C. Sec. 1677b(a)(1), as amended by Sec. 615 of the Trade and Tariff Act of 1984, Pub.L. No. 98-573 (Oct. 30, 1984)
 
 
 [32]
 Red Raspberries from Canada: Final Determination of Sales at Less Than Fair Value, 50 Fed.Reg. at 19,771
 
 
 [33]
 WRRC I, 657 F.Supp. at 545
 
 
 [34]
 Section 353.56(a) provides the general rule for conversion of currencies that is to be used in determining the difference between the United States price and the foreign market value
 
 
 [35]
 WRRC I, 657 F.Supp. at 545
 
 
 [36]
 Smith-Corona Group, 713 F.2d at 1571-72