IPSCO, INC. and Ipsco Steel, Inc., Plaintiffs,

v.

The UNITED STATES, Defendant,

and

Lone Star Steel Co., Defendant–Intervenor.

Court No. 86–07–00853.

United States Court of International Trade.

Nov. 23, 1988.

Barnes, Richardson & Colburn, Rufus E. Jarman, Jr. and Matthew J. Clark, New York City, for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Platte B. Moring, III, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

Dewey, Ballantine, Bushby, Palmer & Wood, Michael H. Stein, Washington, D.C., for defendant-intervenor.

## OPINION

RESTANI, Judge.

On April 22, 1986, the United States Department of Commerce, International Trade Administration (ITA) issued a final affirmative countervailing duty determination in *Oil Country Tubular Goods from Canada,* 51 Fed.Reg. 15,037 (Apr. 22, 1986). On May 4, 1988, this court remanded the action to ITA because ITA, in choosing a period over which to allocate the bounty or grant received by Ipsco, "failed to provide a non-arbitrary basis for its decision to use a 15 year period that was derived from standardized IRS data on the useful life of equipment in the U.S. Steel industry, rather than a period that could be derived from verified information pertaining to the country and company under investigation in this case." *See Ipsco, Inc. v. United States,* 12 CIT ——, ——, 687 F.Supp. 614, 616 (1988) (footnote omitted). As a result of the court's remand order, ITA issued a determination on remand, dated June 7, 1988, in which it reaffirmed its earlier decision that the 15 year deprecia-

tion schedule was appropriate in light of the facts and evidence of this particular case.

Plaintiffs, Ipsco Inc. and Ipsco Steel, Inc. now challenge this remand determination claiming that ITA "fails to identify any basis to support the use of the 15 year period which was not identified before." *See* Plaintiffs' Comments at 2. Plaintiffs also claim that "[t]he remand determination fails ... to show how the 15 year period could be derived from verified information pertaining to the country and company under investigation in this case." *Id.*

### Discussion

The Court remanded ITA's final affirmative countervailing duty determination because it found that ITA's decision to use a 15 year depreciation schedule to determine plaintiffs' subsidization rate was not supported by any reasoning based on facts of record. *See Ipsco* 687 F.Supp. at 625–26. In response to this order, ITA states that it has "re-examined" its application of the 15 year period and that it has found that the 15 year schedule is the most appropriate allocation period to apply in this case. As support for its decision, ITA argues that its determination is consistent with the intent of the Tariff Act of 1930 as amended, 19 U.S.C. § 1671 et seq. (1982 and Supp. IV, 1986) ("the Act"), which, while it does not define an allocation period for measuring nonrecurring grants and loans, does makes clear that benefits arising from nonrecurring grants or loans should be allocated over a period of time that coincides with the commercial and competitive benefits to the recipient. *See* S.Rep. No. 249, 96th Cong., 1st Sess. 85–86, U.S.Code Cong. & Admin.News 1979, p. 381. Based upon the language of the Act, ITA concluded that "there are no financial or accounting rules or economic arguments that mandate the choice of a particular allocation period," Remand Determination at 2. From this, ITA asserts that it can use an allocation "method" of its choice, so long as it is "reasonable." ITA claims that the 15 year period chosen in this case meets this requirement of reasonableness.

## Use of IRS Tables

The court does not view the selection of a specific time period for allocation as a methodology, in the general sense of a relatively constant approach to a particular problem. Rather, the number of years in the allocation period is a variable to be determined based on particular facts of record. ITA did select a methodology in deciding to value grants utilized for capital asset purchases by allocating the proceeds over the useful life of the capital assets purchased. The court does not understand plaintiffs to challenge this methodology as a general proposition, but rather they challenge ITA's application of this methodology, namely, ITA's adoption of useful life periods derived from non-record evidence. In the remand opinion, the court agreed with plaintiffs and stated that ITA must reach its decision based on the facts of the case before it. *See Ipsco* 687 F.Supp. at 626.

ITA's primary claim in support of the 15 year allocation period is one of administrability. ITA claims that having a "set standard" provides for consistency, administrability, and predictability. A desire for consistency, administrability, and predictability

is understandable, but it is not a substitute for evidence of record.[1]

Even assuming *arguendo* that ITA may adopt *any* allocation period which it determines to be "reasonable," it is unclear from the record why ITA believes that the IRS depreciation schedule for replaceable physical assets [2] is a reasonably accurate indicator of economic reality in the light of plaintiffs' verified financial records.[3] Although ITA states that it believes that the IRS tables are an accurate reflection of economic reality, ITA fails to explain in its remand determination why it believes this to be so. ITA only made a general statement that it would not expect industry specific information to differ from country to country. Remand Determination at 5.

 If ITA wishes to apply information gleaned from public documents it may do so, as long as it relates such information to the facts of the case before it. ITA's "methodology" need not be the "most reasonable" in order to be upheld by this court, but it must nonetheless "reasonably [and] accurately reflect factual information in the administrative record." *See British Steel Corp. v. United States*, 10 CIT 224, 632 F.Supp. 59, 68 (1986) (finding arbitrary

---

1. ITA claims that the set standard promotes consistency because it allows ITA to treat companies from different countries similarly. It promotes administrability because it allows the ITA to collect and analyze information in a timely manner. It promotes predictability because it lets parties know the period over which countervailable grants and equity infusions will be considered, as well as allowing ITA to advise foreign governments and companies what period back in time they must report potentially countervailable practices.

2. The 15 year allocation period is based upon data provided by the U.S. Internal Revenue Service ("IRS") in the 1977 Class Life Asset Depreciation Range System (Rev.Proc. 77–10, 1977–1 C.B. 548 (RR–38)). Apparently, prior to 1981, IRS based its depreciation tables on certain studies. Those studies are not part of the record in this case.

3. For antidumping purposes, ITA has relied on depreciation periods used in a producer's accounting records where the records were not shown to conflict with reality. *See, e.g., Monsanto v. United States*, 698 F.Supp. 275, 282 (1988). *See also Fresh Cut Roses from Columbia; Final Determination of Sales at Less than Fair Value*, 49 Fed.Reg. 30,765, 30,766 (Aug. 1,

1984); In other areas concerning computation of costs, ITA has followed the same approach and consistently held that "our policy is to use the firm's expenses as recorded in its financial statements as long as those statements are prepared in accordance with the home country's generally accepted accounts principles (GAAP) and do not significantly distort the firm's financial position or actual costs." *Carbon Steel Products from Brazil,* 49 Fed.Reg. 28,298, 28,302. *See also Hot–Rolled Carbon Steel Plate and Hot–Rolled Carbon Steel Sheet from Brazil; Final Determination of Sales at Less than Fair Value,* 49 Fed.Reg. 3102, 3105 (Jan. 25, 1984); *Iron Metal Castings from India, Final Determination of Sales at Not Less than Fair Value,* 46 Fed.Reg. 39,869, 39,871 (Aug. 5, 1981). This is not to say that in countervailing duty cases ITA must follow this approach. To the contrary, in countervailing duty cases ITA may choose a different approach as long as ITA relies on record evidence relating to the producer. That a type of accelerated depreciation may be allowable under tax laws, however, does not make accounting records utilizing a different figure unreliable. *See* discussion *Ipsco,* 687 F.Supp. at 624–25, and n. 12.

ITA's use of an allocation period for valuing equity infusions not utilized for capital asset purchases, based on the average useful life of capital assets in U.S. companies.) (*quoting Alhambra Foundry v. United States*, 9 CIT 632, 626 F.Supp. 402, 408 (1985)) (*see British Steel Corp. v. United States*, Slip Op 88-76 (June 13, 1988) [available on WESTLAW, 1988 WL 64914] for further procedural history of case.)

■ In the present case, there is no evidence in the record demonstrating that the basis on which the IRS tables are calculated makes the data therein suitable for use with regard to this producer. For that matter, there is no information of record as to how the IRS figure was derived. There is also no evidence of record indicating that a statistical table for domestic industries contains data applicable to a producer such as Ipsco, which uses a different depreciation schedule and is located in another country. Without such evidence, there can be no reviewable or sustainable decision. ITA has made no attempt to explain the figure it obtained from the IRS tables in relation to the facts of this case, so that the result might be said to reflect the economic reality of these particular plaintiffs. Instead, ITA assumes that the standards upon which IRS based its depreciation schedule makes the IRS data suitable to the industry at issue, no matter where it is located, and no matter what schedule of depreciation the company uses.

ITA's most persuasive argument, assuming *arguendo* that the IRS data has a rational basis which can be related to this case, is that Ipsco did not present solid evidence to refute the fifteen year period. This would imply that ITA does not consider company specific accounting records adequate indicators of useful life for countervailing duty purposes.[4] The court finds somewhat disingenuous ITA's position that there is flexibility in this area and that Ipsco had a useful opportunity to present evidence of actual useful life. The entire thrust of the remand determination indicates that this would have been a futile act. ITA wants a firm rule. In the past it has only applied this rule, and ITA states that it does not want to consider company specific or country specific allocation periods. Furthermore, ITA is the investigator. For all practical purposes, only it can define what constitutes satisfactory evidence of a proper allocation period. ITA, however, has given no guidance as to what the appropriate evidence might be. It would be inequitable under these conditions to rule in favor of ITA, merely because Ipsco has not satisfied some undefined burden.

When this court remanded this case with instructions that ITA reevaluate its selection of allocation periods, this court indicated that ITA was not directed to use the particular period claimed by plaintiffs, but that ITA must select a period which is appropriately based on the facts of this case. Essentially, ITA rearticulated its non-record related reasons for using the 15 year schedule. In doing so, it appears that ITA may have confused its rulemaking powers with its adjudicatory function.

### Rulemaking versus adjudication under the "APA"

The Administrative Procedures Act ("APA") distinguishes between an agency's rulemaking powers and its adjudicatory functions. Under the APA, a rule is the "whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency ..." 5 U.S.C. 551(4) (1982). ITA has the power to enact rules, but when doing so must meet the guidelines of the APA as set out in 5 U.S.C. 553 (1982). When engaging in rulemaking, ITA is required by section 553 to publish a general notice of proposed rulemaking in the federal register; to give interested persons an opportunity to participate in the rulemaking through submissions of written data, views or arguments; to address and/or incorporate the issues brought forth by the participants; and to adopt a concise general statement of the basis and purpose of the rule. *See* section 553(b) &

---

**4.** *See supra* note 3.

(c). Furthermore § 553(d) requires that an agency allow a lapse of at least 30 days between the promulgation of a rule and its effective date.

■■■ ITA's function when acting as an adjudicator differs from its function when acting as a rulemaker. When acting as a rulemaker, ITA may adopt certain firm rules, or even rules which create presumptions, that it may apply across the board. When acting as an adjudicator, however, ITA may only apply those rules which it has already promulgated. If ITA has not promulgated a regulation which resolves a particular issue, ITA must analyze the issue of concern on the basis of evidence found in the record. In the present case, ITA has taken information contained in public pronouncements of another agency and has applied it to plaintiffs in the same manner as ITA would apply a regulation in an adjudicatory proceeding. ITA has not promulgated a regulation regarding allocation of subsidy benefits used for the purchase of capital assets that incorporates the IRS tables. If ITA wishes to promulgate a regulation incorporating such tables for allocation purposes or, more likely, creating a presumption in favor of such tables, it may be able to do so. But if such a regulation is proper, ITA could only apply the regulation in future proceedings, not in the present case.

As indicated, ITA claims that it uses the allocation period contained in the IRS tables for reasons of consistency, administrability, and predictability. Although not explicitly stated in such terms, ITA suggests that these concerns override APA rulemaking requirements. ITA is incorrect in this assumption. These concerns, taken as a whole, may be sufficient to cause ITA to consider rulemaking in order to promulgate a "set standard" regarding the issue of allocation for capital asset purchase subsidies. To attempt to apply a rate rule in an adjudicatory proceeding, however, without first having adopted the rule in accordance with APA requirements is contrary to law. ITA may circumvent APA procedures only in specific enumerated exceptions, none of which apply in this particular case.

Nor does precedent support ITA's position that APA rulemaking procedures are not applicable in this case. The Court has consistently held that ITA, when using a rule must either first promulgate that rule in accordance with APA rulemaking requirements, or alternatively, tailor its use of the rule to the specific facts of the case before it. *See Carlisle Tire & Rubber Co. v. United States*, 10 CIT 301, 634 F.Supp. 419 (1986); *British Steel Corp v. United States*, 10 CIT 224, 632 F.Supp. 59 (1986); *Saudi Iron and Steel Co. v. United States*, 12 CIT ——, 686 F.Supp. 914 (1988). In *Carlisle Tire & Rubber Co.* for instance, the court held that ITA could not use a "set rule" stipulating that a dumping margin of .5 percent or less was *de minimis* unless ITA had first promulgated such a rule in accordance with APA requirements. Despite this, however, the court further held that "[e]ven though there is no 'rule' that margins less than .5 percent are *de minimis*, [ITA] may find that margins of approximately .45 percent are *de minimis* in this investigation. To do this [however, ITA] must explain the basis for its decision." 634 F.Supp. at 423 (citations omitted.) This approach was upheld in *Washington Red Raspberry Comm'n v. United States*, 859 F.2d 898 (Fed.Cir.1988), by the Court of Appeals for the Federal Circuit when it "affirm[ed] the Court of International Trade's decision sustaining the ITA's application of the *de minimis* rule if we determine both that the record contains substantial evidence supporting the ITA's calculation of the dumping margin *and* that the record contains substantial evidence supporting the ITA's basis for its application of the *de minimis* rule." *Id.* at 903. In the present case, there is no evidence in the record which supports ITA's decision to apply a 15 year allocation period to the plaintiffs in this case.

### Conclusion

■■■ ITA is not barred from using generally published information, particularly if company specific information is not obtainable. ITA may use generally available public information, such as IRS tables, if it makes that information part of the record,

provides evidence of the relationship of that information to the case at hand, and if it applies such public information in a manner that conforms with the facts relevant to the specific parties before it. In the present case, ITA calculated plaintiffs allocation schedule based upon a figure which ITA obtained from the IRS tables. ITA did not attempt, however, to tie the data from the tables to plaintiffs' business. ITA has neither demonstrated why its chosen 15 year allocation period is suitable to plaintiffs, nor explained how that period reflects the economic and commercial reality of benefits to plaintiffs' company. ITA has twice failed to provide an adequate reason, based on the record, as to why the allocation period used by plaintiffs in their regular accounting procedures is not appropriate, or to point to evidence of record as to why the 15 year period *is* appropriate. Therefore, the court must assume that such information does not exist in the record.[5] As the court is uncertain as to what type of investigation or data ITA would have found satisfactory had it realized at the outset that it may not simply apply IRS tables, ITA may open the record to obtain data from Ipsco as to an appropri-

ate allocation period. ITA must also define some standards so that Ipsco will know what type of information is sought. Alternatively, if ITA finds the data provided by Ipsco previously to be sufficient ITA may construct a figure from Ipsco's verified accounting records to use as an allocation period.

Accordingly, the court finds that ITA's determination after remand that the 15 year period listed in the IRS tables appropriately reflects the commercial and competitive benefits of the subsidy which plaintiffs received, is not supported by substantial evidence on the record, nor is it in accordance with law. Consistent with the foregoing, ITA is directed to calculate an allocation period which will accurately reflect the commercial and competitive benefit received by the plaintiffs in this case.

---

5. The court has found no such information, but recognizes that some items of information are more obscure than others.